WHITTAKER vs. THE STATE.

*November 15 — November 30, 1880.*

CRIMINAL LAW AND PRACTICE. *"Consent" in Rape.*

1. In a prosecution for rape, where the evidence did not show such personal violence and threats that, through terror, the power of volition and of resistance was wholly lost, the court charged the jury that, "if the woman ultimately *consented* to the intercourse, such consent not being

freely or voluntarily given, but being obtained through fear, duress and fraud, or partly by fear and partly by force, then the offense was rape;" and it gave other instructions of like effect. *Held*, error.

2. Strictly speaking, while ultimate *submission* of the woman, induced by fraud or fear, or by incapacity for further resistance, may not be inconsistent with the crime of rape, her *consent* (which properly implies a positive act of the will) is always inconsistent with that crime.

ERROR to the Municipal Court of *Milwaukee* County.

*Whittaker*, having been convicted of rape, brought the judgment here for review on writ of error. The error alleged in the instructions will sufficiently appear from the opinion.

*James Hickcox* and *Wm. F. Vilas*, for plaintiff in error.

*H. W. Chynoweth*, Assistant Attorney General, for the state.

ORTON, J. The circuit court gave the jury the following instructions, which were excepted to: "*First*. The element of force forms a material ingredient of the offense of rape, by which the resistance of the woman violated is overcome, or her consent induced by threats of personal violence, duress or fraud; for, unless the consent of the woman to the unlawful intercourse is freely and voluntarily given, the offense of rape is complete. *Second*. If the circumstances show that the consent was obtained by the use of force, and the woman's will was overcome by fear of personal injury, then the crime is rape. *Third*. If the woman ultimately consented to the intercourse, such consent not being freely or voluntarily given, but being obtained through fear, threats, duress or fraud, or partly by fear and partly by force, then the offense is rape."

These instructions, so far as they relate to the consent of the prosecutrix, were clearly erroneous, and were calculated to mislead, and, we think, did mislead, the jury.

This is not a case where the prosecutrix was overcome by threats of personal violence, and paralyzed and rendered helpless and passive by fear, so that her volition could not be exercised either for or against the act of sexual connection.

The testimony does not show that the threat of personal violence overpowered her will, or so terrified her as to destroy or suspend, for the time being, all power of mental protest or physical resistance, or that she was so subjugated to the will of the defendant, by fear of death or of great personal injury, that she was incapable of voluntary action. She testified that the threat of using a revolver was conditional upon her attempting again to cry out or give alarm; but her testimony clearly shows that she was not only capable of continuing but did continue resistance, to the utmost extent of her physical ability, to the last, or, if she ceased struggling before the consummation of the act, it was because she thought it unavailing; and that even after the the threat of using a revolver by the defendant, she again attempted to cry out and give alarm, and that the defendant " tried to shut her up." She says: " I tried my best I could, and I couldn't do any more, I got so tired out. I tried to save me so much as I could, but I couldn't save myself, and he held me, and tried to do what he was made to do, and I couldn't help myself any more. He had my hands tight and my feet tight, and I couldn't move from my place even; and of course at last I worked so much as I could, and I gave up."

I mention this evidence to show that this case is not governed by those exceptional, and, I think, questionable authorities, which hold that *that consent* which is procured by threats and personal violence, to the extent of overpowering the will, is not inconsistent with the crime of rape; as in Roscoe's Crim. Ev., 806, "consent forced by fear," which is defined, "yielding at last to violence;" or as in 1 Russell on Cr., 904, " consent forced by fear of death or duress." Such use of the word " consent " is only excusable in cases where, by fear and terror, the power of volition and physical resistance is wholly lost, as in *State v. Ruth*, 21 Kansas, 53. The same incautious use of the word is found in *Croghan v. The State*, 22 Wis., 444; but Mr. Justice COLE defines the sense in which it is

so used. "But if the circumstances show that this *consent* was obtained by the use of force, and the *woman's will was overcome* by fear of personal injury, then the crime becomes one of a higher degree" (rape). In further explanation and palliation of this use of the word, it has been held that forcible connection with a female who is insane, or an idiot, or intoxicated so as to be insensible, or who is deceived, believing the defendant to be her husband, and in other like cases, where the *will* of the female does not concur with the act, or oppose it, and does not act at all, and where she has no power of consenting or dissenting, the act is said to be "against her will," and this necessary ingredient of rape is present. 2 Whart. Cr. L., § 1142, and note *a;* and as in *Walter v. People,* 50 Barb., 144; *People v. Quin,* id., 128; and *Crosswell v. People,* 13 Mich., 427.

In such cases it is consistent to hold that the act is "against the will" only because it was not approved by the will, or the will did not concur with the act. In all cases where there is no sensibility or consciousness, or freedom of the will, the act is said to be against the will. It is remarkable that no court has ever been incautious enough to say, even in such cases, that the act is or may be "not against the will," and yet be rape. It may be that, in a similar sense, the word "consent" has sometimes been unguardedly used, in cases where the will has been overcome by fear of personal violence, and has no power of action whatever, and no power to oppose or dissent, as *passive* consent, and not dissenting as consenting. It is to be regretted that the terms "with her consent" and "with her acquiescence" have ever been held compatible with the crime of rape. In all of the cases in which they have been used, they are as inaccurate as would be the terms "with the will" or "not against the will," which are never used. This misuse of the word in *Croghan v. The State, supra,* and which was only incidental and not necessary, was afterwards corrected by this court in *Fizell v. The State,* 25 Wis., 364, in

which the terms "against her will" and "without her consent" are used as convertible terms in defining rape of a female over ten years of age; and, still later, in *Conners v. The State*, 47 Wis., 523, an instruction asked on behalf of the defendant that "if the woman resist, but finally *consent*, no offense is committed," was held to be correct, and should have been given. Mr. Justice LYON says, in his opinion in that case: "Voluntary submission of the woman, while she has power to resist, no matter how reluctantly yielded, removes from the act an essential element of the crime of rape." "If the carnal knowledge was with the voluntary consent of the woman, no matter how tardily given, or how much force had been theretofore employed, it is no rape." More time has been spent on this branch of the subject because the instructions given in this case might seem to be warranted by the case of *Croghan v. The State*, in this court, and by similar authorities elsewhere, and in accordance with which they were doubtless intended to be given.

To will or to consent is an operation of the mind, and implies *positive* mental action, and when these words are used as the ground of responsibility for any given act, their meaning is the same. It is the *quo animo* of the act. Consenting is to be willing, as a condition of the mind. In the law, and in defining the crime of rape, the terms "against her will" and "without her consent" are used convertibly. 2 Whart. Cr. L., §1141. And they are so used in the statutes of many of the states, as in Massachusetts, Vermont, Ohio and New Jersey. Where, therefore, there is physical ability to resist, and freedom of the will to protest or dissent, to say that the act may be rape when committed "with the consent" of the woman, is as erroneous as to say that it need not be committed "against her will." The terms "without her consent," in the Massachusetts statute, are held to apply to a case where the defendant knows that the woman is insensible and incapable of consenting. *Comm. v. Burke*, 105 Mass., 376. When the

mind is subjugated, as well as the body, so that the power.of volition and the mental capacity to either consent or dissent is gone, then the act may be said to be "against the will," and so also it may be said to be "without consent." But when the mind is left free to exercise the will, and to consent or dissent, then by consent responsibility for the act is incurred. Where there is no such mental capacity, the quality of the act is indifferent; there can be no consent or dissent, and consequently no responsibility. The physical power may be overcome, and the utmost resistance be unavailing; yet the mind may remain free to approve or disapprove, consent or dissent. The expression of consent may be compelled or coërced by threatened violence, and yet there be no consent of the mind.

There is nothing to distinguish this case from ordinary cases, where the resistance and the dissent ought to have continued to the last, and where the physical power of the woman must have been overcome by physical force to make the act rape. A threat of personal injury is the usual accompaniment of such cases. In this class of cases the authorities seem to be uniform that the act must be committed *against the will* of the woman, and *without her consent*, not technically, but actually and in fact, or it will not be rape. "Any consent of the woman, however reluctant, is fatal to a conviction. The passive policy will not do. There must be no consent. There must be the utmost reluctance and resistance." *State v. Burgdorf*, 53 Mo., 65. "It must appear that she showed the *utmost reluctance*, and used the utmost resistance." *Don Moran v. People*, 25 Mich., 356. "It is a vital question whether the woman ceased resistance because it was useless or dangerous, or because she ultimately *consented*." In the latter case it is not rape. *Regina v. Hallett*, 9 C. & P., 748; *Wright v. The State*, 4 Humph., 194; 2 Whart. Crim. Law, § 1142. Acquiescence obtained by mistake, imposition or artificial stupefaction is the only acquiescence allowable. If not thus obtained, it is fatal. Whart. Crim. Law, § 1144. "There

should be no doubt of the real absence of assent." *People v. Benson*, 6 Cal., 221. "There is a difference between consent and submission. Every consent involves a submission, but it by no means follows that submission involves consent." *Regina v. Day*, 9 Carr & P., 722.

Authorities to the same effect might be greatly multiplied, but it is unnecessary to extend this opinion, already quite too long. We are satisfied that it is never proper or safe to instruct the jury in any case that the crime of rape may be committed with the consent of the woman, however obtained, and that it was especially improper in this case. It involves a confusion as well as a contradiction of terms extremely dangerous to the administration of justice in such cases. In defining the necessary ingredients of so high a crime, there should be the utmost accuracy and precision. There should be no doubt about the law, where there is likely to be much uncertainty about the facts in such cases; and, to say the least of it, there was no such absolute certainty that the prosecutrix did not actually consent to the sexual connection in this case as to render such instruction harmless.

*By the Court.*— The judgment of the municipal court is reversed, and the cause remanded for a new trial.