BEARD v. STATE.

Opinion delivered June 4, 1906.

1. SPECIAL TERM OF COURT—JURISDICTION.—Every fact necessary, according to the strict terms of the statute (Kirby's Digest, c. 47), to give authority to hold a special term of the circuit court for the trial of persons confined in jail must be made to appear of record; otherwise the jurisdiction of the court will fail.  (Page 297.)

2. SAME—SUFFICIENCY OF ORDER.—An order for the holding of a special term of the circuit court for the trial of a criminal case which recites that the term is to be held for the trial of a person "now held in ·custody charged with a capital offense" sufficiently alleges that such person is "confined in jail."  (Page 297.)

3. RAPE—SUFFICIENCY OF INDICTMENT.—An indictment for rape which accuses defendant of the crime of rape, and alleges he "then and there in and upon the body of A, a female, unlawfully, wilfully, feloniously, forcibly and with his malice aforethought did make an assault, and her, the said A, unlawfully, wilfully, feloniously, forcibly and of his malice aforethought did ravish and carnally know," etc., is sufficient on appeal to support a conviction of rape, though it fails to allege specifically that the act of carnal knowledge was done against the will of the female, if the objection to the indictment was not raised in the lower court.  (Page 298.)

4. CRIMINAL LAW—OBJECTIONS NOT RAISED BELOW.—A judgment of conviction of a felony will not be set aside on appeal because the foreman of the grand jury failed to indorse his name on the back of the indictment, or because the judge ordered a special venire of petit jurors, instead of causing the regular panel to be summoned, if no objection. on that account was raised in the court below.  (Page 298.)

Error to Phillips Circuit Court; *Hance N. Hutton,* Judge; affirmed.

STATEMENT BY THE COURT.

The defendant, Govan Beard, was arrested upon the charge of having committed the crime of rape, and was indicted, tried and convicted at a special term of the circuit court called by the judge of the circuit for the purpose of trying the case, and was sentenced to be hanged. No objection was made below to any step in the proceedings, no demurrer to the indictment, motion for new trial nor motion in arrest of the judgment was filed.

After verdict and judgment a writ of error was issued by the clerk of the Supreme Court.

The order made by the circuit judge for holding a special term of court was as follows:

"To James R. Bush, Clerk of the Circuit Court of Phillips County, Arkansas:

"It is hereby ordered that a special term of the circuit court of Phillips County be had and held on Thursday, the 4th day of January, 1906, for the trial of one Govan Beard, now held in custody, charged with a capital offense. You are furthermore ordered and directed to issue a venire facias to the sheriff of Phillips County, requiring him to summon a good and lawful grand jury to attend such special term of circuit court. You are furthermore ordered and directed to issue a notice of the holding of said special term to the prosecuting attorney of the First Judicial Circuit, directed to the sheriff of Woodruff County, to the end that the said notice may be served at least ten days before the commencement of said special term. You are furthermore directed to spread this order at large on the records of the Phillips Circuit Court.

"Given under my hand as judge of said court in chambers at the city of Marianna, on this 22d day of December, 1905.
    [Signed]                          "H. N. HUTTON,
           "Judge of the First Judicial Circuit of Arkansas."

Since the cause came here on writ of error, the circuit court at the regular May term, 1906, has made an order correcting by *nunc pro tunc* entry the original order made by the judge in vacation, so as to recite the fact that the defendant was confined in jail at the time the special term was ordered. This additional order of the court has been brought here on writ of certiorari.

The indictment upon which the defendant was tried and convicted is as follows:

"The Grand Jury of Phillips County, in the name and by the authority of the State of Arkansas, accuse Govan Beard of the crime of rape, committed as follows, towit: The said Govan Beard, in the county and State aforesaid, on the 22d day of December, A. D. 1905, then and there upon the body of Annie Mc-Able, a female, unlawfully, willfully, feloniously, forcibly and with his malice aforethought did make an assault, and her the said

Annie McAble, unlawfully, willfully, feloniously, forcibly and of his malice aforethought did ravish and carnally know, against the peace and dignity of the State of Arkansas.

[Signed]                                        "P. R. ANDREWS,
                                                "Prosecuting Attorney."

*Vinson & Wooten,* for appellant.

1. Many irregularities appearing in the record would, at a regular term with a fair opportunity to procure evidence and consult counsel, be cured by verdict in the absence of exceptions saved; but since defendant was indicted, tried and convicted all on the same day, without the time allowed by law to prepare for trial, with no witnesses in his behalf, and with time waived by counsel below for presenting motion for new trial or in arrest of judgment, these irregularities are submitted for the consideration of this court. The indictment is not signed by the foreman of the grand jury. Kirby's Digest, § 2224. Defendant was not served with copy of indictment 48 hours before being placed on trial, and the time was not waived except by plea on arraignment. *Ib.* § 2274. The judge in vacation ordered a special venire of petit jurors to try the case, which was executed by the sheriff without reference to the statute. *Ib.* § § 2345 and 4515. The sheriff made no return of the order showing whom he had served as such jurors until after the trial. See Kirby's Digest, § 4508 *et seq.*

The order calling the special term is defective because it does not show that the defendant was confined in jail at the time the order was made, nor that he was confined in jail on an indictment previously found, or for indictment to be found. Kirby's Digest, § 1532; 2 Ark. 253. The words "held in custody" and "confined in jail" are not equivalent terms. One may be in custody of an officer after arrest and before warrant is issued, but he may not be confined in jail without a commitment. Kirby's Digest, § § 2122, 2128, 2130. Sentence upon the verdict was pronounced on the day following the trial, etc. Upon the record, sentence must have followed immediately upon receipt of the verdict. Though it discloses that defendant waived his right to 48 hours, it does not show that he waived the six hours allowed him before passing sentence. *Ib.* § 2432.

Defendant was given no opportunity to show cause why judgment should not be pronounced against him. *Ib.* § § 2438, 2439.

2. The indictment is defective in that it does not charge that defendant carnally knew the female against her will. 4 Blackstone, Com. 210; Kirby's Digest, § 2005. This is the essence of the crime, and must be alleged. 8 Ark. 400; 29 Ark. 68; 32 Ark. 704; 50 Ark. 330; 54 Ark. 660; 12 N. C. 142; 27 Tex. App. 498; 106 N. C. 635; 63 Me. 210; 12 Tex. App. 612. The defendant can not be convicted of an offense with which he is not charged. 29 Ark. 68; 54 Ark. 664; 15 Ark. 204; 19 Ark. 205; 12 Ark. 170; 45 Ark. 470. That the court had no jurisdiction, that the indictment charged no offense, and that the record discloses errors at the trial or in giving judgment prejudicial to substantial rights of defendant, are matters that will be reviewed here on the record, though exceptions may not have been saved. 2 Ark. 230; 19 Ark. 205; Kirby's Digest, § 2427; Elliott on App. Proc. § 488; 28 Miss. 100; 83 S. W. 1074; 76 S. W. 953; 78 Pac. 81; 8 S. E. 346; 12 Ark. 170.

*Robert L. Rogers, Attorney General,* and *G. W. Hendricks,* for appellee.

1. It is admitted that defendant must be confined in jail in order to give the court jurisdiction to hold the special term, but it is the existence of the fact, not the order calling the special term, that gives the court jurisdiction.

2. The crime of rape need not be alleged in the words of the statute. 17 Enc. Pl. and Pr. 648; 21 Ark. 184. If an indictment alleges an offense in words sufficiently clear to enable a defendant to plead intelligently, and to act as a bar to another prosecution for the same offense, it is good. 4 Tex. App. 349. The term "ravish," used in the indictment, was sufficient to charge that he obtained carnal knowledge of the woman forcibly and against her will. Webster's Dict.; 17 Tex. App. 574; 12 Pa. 69; 44 Ala. 110; 8 Cox, Crim. Law Cas. 131; 6 Minn. 279; 70 Conn. 104; 11 Tex. App. 301.

3. The requirement that the foreman sign the indictment is directory only, and must be objected to before pleading; otherwise it is waived. 52 Ark. 275; 73 Ark. 328.

McCULLOCH, J., (after stating the facts.) 1. The jurisdic-

tion of the court to proceed in the cause is challenged on the ground that the order of the circuit judge calling the special term of the court does not conform to the requirement of the statute in that it fails to recite that the defendant was *in jail* at the time. The order recites that the defendant was "held in custody charged with a capital offense."

The statute authorizing the holding of special terms of the circuit court read as follows: "The judge of any circuit court may at any time hold a special term for the trial of persons confined in jail, by making out a written order to that effect and transmitting it to the clerk, who shall enter the same on the records of the court." Kirby's Digest, § 1532. It has been held by this court that every fact, according to the strict terms of the statute, necessary to give authority to hold a special term of the court must be made to appear of record, otherwise the jurisdiction of the court will fail. *Dunn* v. *State,* 2 Ark. 230; *Pulaski County* v. *Lincoln,* 9 Ark. 326. The order of the judge must therefore recite every jurisdictional fact, because in no other way can those facts appear upon the record.

The particular question which we have to determine is whether or not the words "now held in custody charged with a capital offense" necessarily mean that the defendant was confined in jail, for under no other construction can the order be taken as having been in conformity with the statute. It is not essential that the exact words of the statute be used. Words of like import or meaning are sufficient. We think that the words used necessarily mean that the defendant was confined in jail. The law does not recognize any other method of holding a prisoner in custody charged with crime than by confinement in jail until examination or trial. The prime object of the statute providing for the holding of special terms of the circuit court is to afford speedy trials to persons deprived of their liberty, and an officer could not deprive a prisoner of that right by holding him in custody without actually confining him in jail.

We hold that the order made by the circuit judge was sufficient to give the court jurisdiction at the special term, and it is unnecessary to pass upon the question of the power of the court at a subsequent term to amend, by *nunc pro tunc* entry, the order made by the judge in vacation.

2. It is next contended that the indictment does not charge an offense, and that the conviction thereon can not be sustained because it fails to allege that the act of carnal knowledge was committed by the accused against the will of the female. . If the sufficiency of the indictment had been questioned by demurrer, we are not prepared to say that the demurrer should not have been sustained. We do not decide that question. The indictment was not questioned either by demurrer or by motion in arrest of judgment, and we are confronted only with the proposition whether or not the alleged defect can be taken advantage of for the first time after the trial and verdict and in this court on appeal or writ of error. Where an indictment omits an allegation of some essential element of the crime—in other words, if it fails to charge a public offense, it is void, and can be questioned for the first time on appeal, without a demurrer or motion in arrest of judgment having been interposed. 12 Cyc. of Law and Proc. pp. 811, 812 and cases cited. But when the defect is one of form or of imperfect expression merely, it can not be taken advantage of on appeal or writ of error for the first time. In other words, if the indictment imperfectly charges a public offense, the defect must be taken advantage of by demurrer or motion to quash; but if it omits entirely an allegation of some essential element of the crime charged, so that it can be said that no offense is charged, then it can be taken advantage of at any time. 1 Bishop, Crim. Proc. § 707a; Clark, Crim. Proc. § 118; *Heymann* v. *Reg.,* 8 L. R. Q. B. 102; *Bradlaugh* v. *Reg.,* 3 Q. B. Div. 607; *Brennan* v. *People,* 110 Ill. 535; *People* v. *Swenson,* 49 Cal. 388; *State* v. *Knowles,* 34 Kan. 393; *People* v. *Schultz,* 85 Mich. 114.

Does the indictment in this case charge an offense? It omits an express allegation that the act was committed against the will of the female.

Our statute defines the crime of rape as "the carnal knowledge of a female forcibly and against her will." Kirby's Digest, § 2005.

The fact that the act was committed against the will of the female is an essential element of the crime, and must be charged in the indictment. The indictment accuses the defendant of the crime of rape and alleges that he "then and there in and upon the

body of Annie McAble, a female, unlawfully, wilfully, feloniously, forcibly and with his malice aforethought did make and assault, and her, the said Annie McAble, unlawfully, willfully, feloniously, forcibly and of his malice aforethought did ravish and carnally know," etc. This necessarily implies that the act of carnal knowledge was done against the will of the female. The act involved an assault, as is properly charged in the indictment, and it could not have been an unlawful assault if not against the will of the female. Therefore to charge an assault upon the female in committing the act necessarily charges that it was done against her will. The charge might not be deemed sufficiently specific and clear if the indictment had been met by a demurrer to quash, but it is sufficient to support a judgment of conviction. It can not be said that it wholly fails to charge the commission of a public offense.

3. It is also argued that the judgment of conviction was void because the foreman of the grand jury failed to indorse his name on the back of the indictment, and because the judge of the court ordered a special venire of petit jurors, instead of causing the list of jurors selected by the jury commissioners at the preceding term to be opened and the jurors thus selected to be summoned. It is too late to raise these questions for the first time on appeal or writ of error. No objection was taken below to the indictment nor to the petit jury summoned and impaneled.

Affirmed.

HILL, C. J. The Criminal Code provides: "The indictment is sufficient if it can be understood therefrom."

First. * * * (as to the grand jury and court).

Second. * * * (as to the venue).

Third. "That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment on conviction, according to the very right of the case." And it further provides: "No indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merits." Kirby's Digest, § § 2228, 2229. An indictment alleg-

ing that the defendant is guilty of the crime of rape, and charging that in the county where found the defendant did at a certain time upon a designated female unlawfully, wilfully, feloniously and forcibly ravish and carnally know her, gives a sufficient understanding of the crime charged to enable the court to pronounce judgment on conviction according to the very right of the case. If, however, it was insufficient in not charging "against her will," it does charge he is guilty of rape (which is defined to be "the carnal knowledge of a female forcibly and against her will." Kirby's Digest, § 2005) in that he unlawfully, willfully, feloniously and forcibly did ravish and carnally know the designated woman, then the omission of those other words do, not tend to the prejudice of any of the substantial rights of the defendant, and should be disregarded.

The Code in this, as in some other States, had to be construed and shaped by lawyers and judges learned in the intricacies of common-law pleading, and who were trained in the niceties and refinements of criminal procedure, and who looked with black disfavor upon radical changes wrought by the civil and criminal codes.

The natural result was to minimize the changes required; and by inimical and technical construction many of the wisest reforms were frittered away. The above-quoted sections have never been given the full sway which their plain language calls for, and, in my opinion, in consequence many cases have been reversed where the indictment should have been held sufficient, and where none of the substantial rights of the defendant had been prejudiced. Therefore, I think the indictment in this case was good, whether raised on demurrer, motion in arrest, or writ of error, or any other way.

For these reasons I concur in the judgment, but not in the reasoning and distinctions in the opinion of Mr. Justice McCulloch, as the basis of the judgment. They are sound, but I prefer putting the judgment on the ground mentioned. Upon the other questions discussed I concur entirely in the opinion.

Mr. Justice BATTLE concurs in the view that this is a good "Code indictment."

ON REHEARING.

Opinion delivered July 23, 1906.

HILL, C. J. A petition for rehearing was presented in this case after the time contemplated by the statute and fixed by the rules of the court when such petitions may be heard. The petition was accompanied by a showing of matters occurring after the trial indicating the falsity of the evidence adduced against the appellant, and asked a stay of proceeding under the judgment of this court until an application could be made to the trial judge for a writ of error coram nobis, and until this court reconsidered its decision. The court, being in recess, could take no action on the matter, but two judges of the court granted a supersedeas, to be effective until the court convened, and could formally act upon the petition for rehearing. It is not pretended that this court could take cognizance of these subsequent matters, and they were only presented as an argument in favor of granting a temporary stay until those matters could be presented to the trial court and the decision of this court on the former hearing re-examined. The court has ignored the presentation out of time, and carefully re-examined its former decision, as it is within its power to recall a mandate during the term.

The case came here on writ of error, and only presented technical questions as to the sufficiency of the indictment and regularity of the order calling the special term of court at which appellant was convicted. The matters usually presented on appeal, the sufficiency of the evidence, the rulings and instructions of the court, were not presented in this case, and there was no bill of exceptions, nor motion for new trial nor in arrest of judgment. The evidence, not being preserved by bill of exceptions, was, of course, not before the court.

Some difference of opinion existed as to whether the indictment would have been sufficient if a demurrer had been interposed to it, but that point was not decided, as all the judges concurred in holding that this alleged informality could not be presented here for the first time on writ of error. Some of the judges thought the indictment in good form wherever attacked, and preferred putting the decision on that ground. There are no other questions before the court, and, a majority being satisfied

that the former decision was a correct declaration of the law on the points involved, the motion for rehearing is denied.

The only review in criminal cases, beyond a review of the events of the trial on writ of error or appeal, is an original proceeding in the trial court on writ of error coram nobis. The limits and office of this proceeding were considered by this court in 1893, and the opinion was written by Mr. John Fletcher, special judge (*Howard* v. *State,* 58 Ark. 229). Matters not presented in the trial and not reviewable on appeal must be reached by this ancient writ; and, when it is inapplicable, the power of the courts is exhausted, and a power is lodged elsewhere to relieve against convictions legally obtained, but which may be shown to be wrong in fact or too harsh. It is the paramount duty of the courts to preserve the constitutional limits of all departments of government, and it is needless to say that the courts must be the first to limit their power within their constitutional orbit.

BATTLE and McCULLOCH, JJ., concur.

BEARD v. STATE.

(Dissenting opinion delivered July 23, 1906.)

WOOD, J., (dissenting.) When this case was first considered, I was of the opinion that the indictment was defective in omitting the words "against her will." But without extended research I yielded to the view that the defect could only be reached by demurrer or motion in arrest. Upon a careful consideration of the authorities cited in the able brief of counsel for the complainant on motion for rehearing, and upon a somewhat exhaustive investigation independent of such brief, I have reached the conclusion that the defect is jurisdictional, and renders the indictment void. The opinion of the court will establish a precedent for cases where human life is involved. It overrules, without mentioning, *Sullivant* v. *State,* 8 Ark. 400, and changes a sound rule of criminal pleading which has always obtained in this State before and since the adoption of the Code. In support of my position therefore, I shall trace the history of the definition of the crime of rape, as contained in our statute, and review at length the authorities upon the subject.

Rape is the carnal knowledge of a female forcibly and against her will. Kirby's Digest, § 2005. Mr. Blackstone de-

fines rape as above, and says: "It was punished by the Saxon laws, particularly those of King Athelstan, with death." and afterwards "by William the Conqueror with castration and loss of· eyes." 4 Blk. 210-211*. During the reign of Edward I the following statute was passed: "The King prohibiteth that none do ravish any wife or maiden of full age nor any other woman of full age against her will," etc. Westm. 1, ch. 13 (3 Edw. I, A. D. 1275). And ten years later the following: "If a man from henceforth do ravish a woman, married, maid, or other, where she did not consent, neither before nor after, he shall have judgment of life and of member; and likewise where a man ravisheth a woman, lady, damsel or other with force, although she consent after, he shall have judgment as before is said," etc. Westm. 2, ch. 34 (13 Edw. I, A. D. 1285.) English authors who wrote while these statutes were in force treated them as declaratory of the common law as to the definition of rape, and they all use the words 'against her will' in giving the definition of the crime." 3 Coke, Inst. 60; 1 Hale, P. C. 627, 628; 1 Hawkins, P. C. 122; 1 East, P. C. 434. The statute of Geo. IV, ch. 31, after expressly repealing the statutes of Westminster 1 and 2, *supra,* declared that "every person convicted of the crime of rape shall suffer death as a felon." Thus it was assumed that the definition of rape was so well understood and established by the common law of England that a statutory definition was unnecessary. English writers on criminal law, since the repeal of the statutes of Westminster, having likewise followed the common-law definition given by Mr. Blackstone. 1 Russell on Crimes (3 Eng. Ed.), 675, 3 Int. Ed. 223; 2 Arch. Pr. & Pl. 304; 3 Chitty's Cr. Law, *p. 77.

Lord Campbell in *Regina* v. *Fletcher,* 8 Cox, Cr. Cases, 131, erroneously assuming that the statute of West. 2 was still in force, (notwithstanding its repeal, by the statute 9 Geo. IV, *supra*), followed that statute, and used the words "without her consent," instead of the words "against her will," in giving the definition of the crime of rape, and claimed that there was a difference in the meaning of the two expressions, and that the expression "without her consent" was the

---

*(Athelstan was king of England in A. D. 925 and William the Conqueror about one hundred years later. See the New International Ency. "Athelstan," "William I.")

proper one. He cites to support him the cases of *Regina* v. *Camplin*, 1 Cox, Cr. C. 220, and *Regina* v. *Ryan*, 2 Cox, Cr. C. 115. In *Regina* v. *Camplin,* as reported in 1 Den. C. C. at page 94, Mr. Baron Parke, in note to the editor giving the reasons for the decision, states: "All the ten judges agreed that in this case, where the prosecutrix was made insensible by the act of the prisoner, and that an unlawful act, and when also the prisoner must have known that the act *was against her consent at the last moment that she was capable of exercising her will,* because he had attempted to procure her consent and failed, the offense of rape was committed." In *Regina* v. *Ryan,* it is said: "The presumption is the young woman *would not have consented,* and if she was in a state of unconsciousness at the time the connection took place, * * * any one having connection with her would be *guilty of rape."* In these and similar cases where the female, on account of unconsciousness, nonage, or other cause, was incapable of consenting to the act of sexual intercourse, the decisions are put upon the ground that the law presumes or assumes that she did not and would not have consented to an unlawful act of sexual intercourse, and such an act must therefore be presumed to *be against her will.* As was said by Alderson, B., in *Camplin's Case,* 1 Cox, Cr. Cases, 220: "It may be considered against the general presumable will of a woman that a man should have unlawful connection with her." This states the reason upon which the decisions cited by Lord Campbell were based, and it shows clearly that the Lord Chief Justice was inaccurate in making a distinction between the words "against her will" and the words "without her consent" or "where she did not consent," as used in the statutes of Westminster 1 and 2 *supra.* Mr. Bishop, in giving what he calls the "corrected definition," follows Lord Campbell's idea, and, of course, makes the same mistake. Bish. Cr. Law, § 1115, note. Other American authors on criminal law and some of the State statutes have likewise followed the statute of Westminster 2 in giving the definition, using the words "without her consent" or "without her conscious permission." 1 Wharton on Cr. L. 556; Clark, Cr. Law, § 79; Penal Code of Texas, art. 528; *Walton* v. *State,* 29 Tex. App. 163.

Mr. Bishop, after saying that the words of the statute of

Westminster 2 and the modern amended definition of rape are not "against her will," but "where she did not consent," concedes that the former is the more common expression in our American statutes, and says: "This expression, 'against her will' appears to have been always in all our States and in England employed in the indictment;" and he continues: "Its sufficiency can not be doubted, even where the other expression indicates the exact law. It is a permissible substitute." 2 Bish. Cr. Pro. § 951. In his work on statutory crimes he says where the statutes contain the words "against her will," the indictment should contain the same words, instead of the words "without her consent," for, says he, "though the former ('against her will') are a permissible substitute for the latter ('without her consent'), it is not so plain that the latter is such for the former." Bish. Stat. Cr. § 480. In his first volume on Criminal Law, § 555, he defines rape as "the having of unlawful carnal knowledge, by a man of woman, forcibly and against her will, or when she does not consent," using the expressions synonymously.

So much for the definition of rape. The truth is, the statutes of Westminster 1 and 2, while they were in force in England, were never intended to change the definition of rape as it had always existed by the common law of England, and the words in the statute of Westminster 2 were not intended, as assumed by Lord Campbell, to have any different meaning than the words *"against her will"* in the statute of Westminster 1.

Mr. Stephen in his "Digest of the Criminal Law of England," speaking of the statute of Westminster 2, says: "I can not think the Legislature intended to lay down any definition at all Their language implies that the crime was then well known." See latter part of note 1, p. 190. But if any definition was intended by the statutes, when they were repealed, the definition of the crime was left as it had been established by the common law. Judge Gray in *Commonwealth* v. *Burke,* 105 Mass. 376, shows that the words "against her will" and "without her consent," as used in the statute of Westminster 1 and 2, mean the same thing, and "that the distinction between these phrases, as applied to this crime, which has been suggested in some modern books, is unfounded."

I concede that it is wholly immaterial, for the purpose of

79—20

the discussion of the issue between my brothers and myself, whether or not there is any distinction between the words "against her will" and "without her consent," and also as to which of these was the proper definition in giving the common-law definition of the crime. My only purpose has been to show that our statute, in using the words "against her will," has followed accurately, *even to the very words,* the definition of rape as it has come down to us from the common law of England, and that one or the other of the two expressions "against her will" or "without her consent" (using the terms synonymously) are absolutely necessary, according to all authorities, in expressing an essential ingredient of the crime.

There can be no rape unless the act of sexual intercourse is *"against the will"* or "without the consent" of the female. The words "against her will," by the common law of England and our statute, are used to express this essential ingredient of the crime. They are therefore descriptive of the offense. Mr. Bishop says: "'Statutory words essential in the description of the offense can not be omitted." 1 Bishop, New Cr. Proc. § 618. With all due respect to my brothers, I think the court should be slow to sanction the omission from an indictment of words used in the statute, which, as we have seen, for a thousand years or more have been regarded as essentially descriptive of the offense. For my part, I prefer that such radical innovations in the law should be made by the Legislature. The Legislature has not prescribed any substitute for the words "against her will." The court should not do so.

Mr. Starkie says: "In indictments for particular felonies technical and appropriate words are frequently essential to the description of the offense." After giving "malice aforethought" as an example of such words in an indictment for murder, he says: "The usual course in an indictment for rape is to aver that it was committed *against the will of the female,* and therefore it would not be safe to omit the averment." 1 Starkie, Cr. Pleading. 77. Chitty gives the form of the indictment for rape at the common law as follows: "That A. O. (omitting unnecessary words) in and upon one A. J. (omitting unnecessary words) violently and feloniously did make an assault, and her the said A. J. *against the will of her* the said A. J. then and there

feloniously did ravish and carnally know," etc.    3 Chitty's
Cr. Law, *815.  Starkie and Archbold give same form.  2 Starkie
Cr. Plead. 431; 2 Arch. Cr. Pl. & Pr. 304.  In note C to 2
Starkie's Cr. Plead. 431, it is said: "The absence of previous
consent is a material ingredient in the offense."  Mr. Blackstone
says: "Our English law makes it a necessary ingredient in the
crime of rape that it must be against the woman's will."  4 Blk.
*211.  Mr. Russell says: "As the absence of previous consent is
a material ingredient in the offense of rape, it must be averred
in the indictment."  3 Russell on Crimes (Int. Ed.), 230.  No
case can be found in England, I think, holding that the words
"against her will" are not essential in an indictment for rape.
On the contrary, is is said in *Regina* v. *Allen,* 2 Moody,
p. 235, *179: "The word *rapuit* is held to be essential.  1 Hale,
628 and 632.  So are the words *against her will.*"  It was essential
therefore, in order to charge the crime of rape by the common
law of England, that the indictment allege that the carnal knowl-
edge was "against the will" of the female.

The majority concede that the act of sexual intercourse must
be "against the will" of the female, and that such, being an essen-
tial element, must be charged in the indictment.  But they hold
that the other words used, under the Criminal Code, sufficiently
convey the idea expressed by the words "against her will."  The
form of indictment for rape in our Criminal Code has the words
"forcibly, unlawfully and against her consent."  Cr. Code, p.
407.  The liberality of the Code has been often successfully in-
voked to "cover a multitude of sins" in pleading, and I heartily
approve its use in all cases to prevent technicalities, and to insure
the trial of a cause upon its merits.  But the omission here goes
to the *merits of the cause,* and it is so egregious that the Code
can not cure it.  Even under the Code, a man *must be charged
with a public offense before he can be convicted thereof.*  Sec-
123 of our Criminal Code provides: "The indictment must be
direct and certain as regards, first, the party charged; second,
the offense charged; third, the venue; fourth, "the *particular
circumstances of the offense charged where they are necessary to
constitute a complete offense.*"  Sec. 127 provides: "The indict-
ment is sufficient if it can be understood therefrom that   *   *   *
third, the act or omission charged as the offense is stated with

such a *degree of certainty as to enable the court to pronounce judgment on conviction according° to the right of the case."* Sec. 129 provides: "No indictment is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by any defect which does not tend to the substantial rights of the defendant on the merits." Sec. 137 provides: "The words used in a statute to define an offense need not be strictly pursued in an indictment, but other words conveying *the same meaning* may be used."

These are the only provisions of the Code that can aid us, and, when applied to the indictment under consideration, they show it to be wholly insufficient. 1. It is not certain as *to the offense charged.* True, the crime is named *"rape,"* but when the particulars constituting it are set forth, they fall short of describing that offense. "The name of the crime is controlled by the specific acts charged." *Harrington* v. *State,* 77 Ark. 480; *State* v. *Culbreath,* 71 Ark. 80; Bishop, Stat. Cr. § 120; *Johnson* v. *State,* 36 Ark. 242. 2. The particular circumstances necessary to constitute a complete offense omitted here are that the carnal knowledge was "against the will" of the female. 3. "The court could not pronounce judgment on conviction according to the rights of the case," because, in the absence of an allegation that the act of sexual intercourse was "against the will" of the female, the court would have to presume that no such proof was had. There could be no proof without an allegation. The court could not pronounce judgment upon the indictment for anything more than an assault. An assault is charged, but rape is not. 4. The defect mentioned does "tend to the prejudice of the substantial rights of the defendant on the merits" for the reasons stated.

While the precise words of the statute, under our Code, need not be used, yet words must be used *conveying the same meaning.* Cr. Code, § 137; *State* v. *Booe,* 62 Ark. 512; *Wood* v. *State,* 47 Ark. 488. "In an indictment for an offense created by the statute it is generally sufficient to describe the offense in the words of the statute." "As a general rule, a criminal charge must be laid in the indictment so as to bring the case within the offense defined in the statute, alleging distinctly all the essential requisites that constitute it." "Where a *general term* in a statute creating an offense is used in connection with the more definite

words, the indictment must charge the offense in the particular words." These excerpts from our own cases show how utterly worthless this indictment is. See cases collated in 1 Crawford's Digest, cols. 492-4.

Chief Justice HILL, in an opinion concurred in by Judge BATTLE, says: "If, however, it was sufficient in not charging 'against her will,' it does charge he was guilty of 'rape' (which is defined to be the carnal knowledge of a female forcibly and against her will, Kirby's Digest, § 2005), in that he unlawfully, wilfully, feloniously and forcibly did *ravish and carnally know the designated woman,* then the omission of those other words do not tend to the prejudice of any of the substantial rights of the defendant." etc. The learned Chief Justice evidently overlooked or ignored *Sullivant* v. *State,* 8 Ark. 400, where it is said: "Every crime consists of certain facts and circumstances, and it is not sufficient to allege in general terms that the offense by name has been committed; but it is necessary to charge those facts and circumstances with requisite certainty, in order that the accused may be apprised of what it is that he is called upon to answer." He also must have overlooked the principle announced in the other cases cited from Crawford's Digest, *supra.*

The acts which are relied upon as constituting the offense must be stated. An offender can not be charged "with having committed an offense of a certain nature and name, without identifying the particular act or acts relied upon. The statement of a conclusion of law, without stating the facts, is bad." Clark's Crim. Pro. § § 61, 62. This rule of criminal pleading is so old and universally established that I refrain from citing further authority.

Taking up the particular words, they neither singly nor combined convey the idea that is intended by the words "against her will," and therefore they can not be used as a substitute for them. The words "against her will" are used to describe the condition of mind of the female. She must be *unwilling* to the act of *sexual intercourse.* This must be shown by the positive conscious resistance of the woman, or by showing a condition of her mind from which it will be conclusively presumed that she did not consent, as where the mind and body were so subjugated that the power of volition and mental capacity to either assent or dissent

is gone. *Whittaker* v. *State,* 50 Wis. 523. None of the other words used show what the *woman* did or did not do; they are used to express the condition of the mind of the accused, and what he did.

But the words "against her will" are distinctive and peculiar, as applying only to the female and describing what must be the status of her mind. A man may *"unlawfully, wilfully,* and of his malice aforethought assault a female and *unlawfully, wilfully, feloniously,* forcibly and of his malice aforethought may *ravish and carnally* know her," and still the act of carnal knowledge may not be *"against her will."* For instance, if a man has carnal knowledge of a female over twelve but under the age of sixteen, although she consents thereto, in law he has unlawfully, wilfully, feloniously and forcibly assaulted her, but he has not committed the crime of rape. Kirby's Digest, § 2008.

The statute used the words "forcibly" *"and* [not or] against her will." The word "forcibly" is not used as an equivalent or synonym for "against her will." Only such force as is incident to the physical character of the act of coition will meet the requirements of this term where the woman does not consent. 1 Wharton, Cr. Law, § § 550, 556, 562. "Wherever there is a carnal connection, and no consent in fact, * * * there is in the act itself all the force which the law demands as an element in this crime." *Regina* v. *Camplin,* 1 Den. C. C. 92; 2 Bishop, Cr. Law, 4; *Coates* v. *State,* 50 Ark. 330; *Warner* v. *State,* 54 Ark. 660. *"Forcibly* does not necessarily mean *violently,* but with that description of force which must be exercised in order to accomplish the act." *Regina* v. *Dee,* 15 Cox, Cr. Cases, 579.

The word "assault" does not convey the idea that the act of sexual intercourse was against the will of the female. A man may put his arms around a woman, or lay his hands upon her unlawfully and against her will, intending to arouse her passions and to secure her consent to the act of sexual intercourse. She may resist for a time and finally yield assent to the act of sexual intercourse. In such case there would be no rape, although at any moment prior to the time her consent was given he would be. guilty of an assault upon her. Moreover, "assault," as used in the indictment, is a generic term to describe what the prisoner did. It precedes in the indict-

ment the assault involved in the act of sexual intercourse, and may refer to some other assault than that. It could not be held to include the specific words "against her will," used to describe the woman's status at the time of the alleged carnal knowledge. Mr. Bishop says: "Though the common form charges in terms an 'assault,' it has been well judged not to be necessary in the indictment." 2 Cr. Pro.; *Com.* v. *Fogerty,* 8 Gray, 489. Then how can this court conclude that it takes the place of an omitted allegation that *is essential?*

The word "ravish" does not signify the same as "against the will," and does not convey the idea that the carnal knowledge was "against the woman's will." It is derived from the Latin verb *"rapio"* and signifies to "snatch," to "seize." Andrews' Lat.-Eng. Lex. Lord Coke says it "signifieth properly to take away by violence and force." 1 Coke, Lit. 137. This is the meaning he gives it under the statute of Westm. 2, ch. 35. Neither under that statute nor by the common law of England was the use of that word sufficient to charge the carnal knowledge of a . woman against her will. The word "ravishment" was equally as applicable to abduction as to rape, and to males as females. 1 Coke, 137, *supra;* 3 Blk. Com. 141; Stephen's Dig. Cr. Law, 190, note 1.

According to Lord Campbell, the word "ravish" under the statute of Westm. 2, means: "having carnal knowledge of a woman by force, and the question then is whether she consents." *Regina* v. *Fletcher, supra.* In an old case in Pennsylvania it is held that it is not necessary to charge that the offense was committed "forcibly and against the will of the woman," where the indictment charges "that the defendant feloniously did *ravish* and carnally know her." *Harmon* v. *Com.,* 12 S. & R. 69. But the learned court cites to support it Hale, Hawkins, Chitty, and East, to the effect that an indictment for rape must contain the technical word *"rapuit."* The authors were discussing certain technical terms of art that could not be dispensed with, like *"murdravit"* in murder, *"cepit"* in larceny, *"rapuit"* in rape. 2 Hawkins, P. C. p. 249, § 77; p. 342, § 110. See 3 Chitty, Cr. Law, p. 813; 3 Russell on Crs. 230 *et seq.; Gouglemann* v. *People,* 3 Parker's Cr. Rep. 15. But not one of them holds that the word "ravish" in an indictment would alone be sufficient to

charge an act of carnal knowledge against the will of the woman. According to the authors cited, the technical descriptive word *"rapuit"* is essential in an indictment for rape. It can not be omitted, any more than the technical words murder, *"murdravit,"* or "malice aforethought," from an indictment for murder, or *"cepit"* from an indictment for larceny, *"burglariter"* from an indictment for burglary, etc. But none holds that it can be used as a substitute for other essential words. Some of them seem to think it carries the idea of carnal knowledge with force, but Lords Coke and Hale say the words *"carnaliter cognovit"* are also essential with *"rapuit"* (Hale, P. C. 628-634; 3 Coke, Inst. 60.), showing that they did not consider that *"rapuit"* necessarily meant carnal knowledge, even, much less carnal knowledge "against her will." The authors cited in *Harmon* v. *Com. supra,* all define rape as the carnal knowledge of female forcibly and "against her will," showing that they regarded these latter words as expressing an essential ingredient of the crime; in fact, *the very essence of it.* 3 Chitty, Cr. Law, 810. In my humble judgment, the authorities all cited in *Harmon* v. *Com., supra,* on this particular point do not contravene the doctrine I have announced, but support it. See Hale's P. Cr. pp. 628 to 634, note 1; 3 Hawkins, P. C. 310; 2 Hawkins, 342; 3 Chitty's Cr. L. 812, 814. Mr. Chitty, after saying that the indictment must contain the technical word "ravished," lays down the form of indictment as I have indicated *supra,* using the words "against her will." 3 Chitty, Cr. L. p. 815, as the particular words to express that essential fact.

The case of *Harmon* v. *Com.* was decided in 1824. Texas follows it in several cases. *Gibson* v. *State,* 17 Texas App. 574; *Williams* v. *State,* 1 Tex. App. 90; *Davis* v. *Texas,* 42 Tex. 226.

The case of *O'Connell* v. *State,* 6 Minn. 279, seems to hold the same view in *dicta,* but in that case the form of indictment for rape suggested by the statute was: "forcibly ravished C. D., a woman of ten years and upwards," and the statute further provided that "it shall be sufficient to follow substantially the forms," etc. prescribed. Of course where the statute in defining forms," etc. prescribed. Of course, where the statute in defining upon the part of the man and want of consent on the part of the

woman, as some of them do, then the indictment may follow the language of the statute. Such is the case of *Leoni* v. *State,* 44 Ala. 110, and *O'Connell* v. *State, supra.*

But the doctrine of *Harmon* v. *Com., supra,* the Texas, and any other cases that follow *Harmon* v. *Com.,* are unsound, as I have endeavored to show. In both Pennsylvania and Texas, in principle, if not *eo nomine,* these cases have been overruled. For, in *Mears* v. *Com.,* 2 Grant's Cases (Penn.), 385, in passing on an indictment for an assault with intent to rape, the court say: "The present bill charged an assault on the prosecutrix with intent to *ravish and carnally know* her *but without denying her consent,* for the term *'ravish'* does not necessarily import the employment of violence." The court held the indictment bad as a charge for an assault with intent to rape, but good for assault and battery. In *Langan* v. *State,* 27 Texas App. 498, the indictment charged that the defendant "in and upon Jennie Barnett, a woman, did make an assault with the intent, her, the said Jennie Barnett, *by force to carnally know."* The Supreme Court of Texas, speaking through Judge Hurt, said: "This indictment would be good for assault with intent to rape if it had alleged that appellant intended to have carnal knowledge *without or against the consent of the prosecutrix.* This omission renders the indictment insufficient for that offense."

If an indictment for an assault with intent to rape is not good because the words "against her will" are omitted therefrom, it is difficult to see how an indictment for rape itself could be good with these words omitted. See *State* v. *Peak,* 130 N. C. 711. The words *"by force"* and "ravish" in above indictments, it was held, could not be used as substitutes for the words "against her will."

In *Jackson* v. *State,* 114 Ga. 861, it is said: "A charge in an indictment that the accused did feloniously assault and attempt to ravish and carnally know the female alleged to have been assaulted necessarily implies that the act was done forcibly and against her will." But the case *harks back* to the old case of *Harmon* v. *Com.,* 12 S. & R., and the Texas cases following it, and the case from Minn., *supra.* I have just shown that Pennsylvania and Texas have repudiated the doctrine, holding in recent cases just the reverse in indictments for assault with intent to

rape, and that the Minnesota case is based on a peculiar statute.

In *Com.* v. *Fogerty* and others, 8 Gray (Mass.), 487, it is said: "The word *'rapuit'* of itself imports the use of force, and, *when coupled with the allegation that the act was done against the consent of the woman, technically charges the crime of rape."* The word *"rapuit"* alone was not sufficient to carry that idea. Although, by all the authorities, the word "ravish" carries with it the idea of force, the terms feloniously "ravished" will not supply the essential allegation that there was an act of sexual intercourse, *"forcibly and against the will of the female."* As was said by Chief Justice Clark in a recent case: "The words 'unlawfully, wilfully and feloniously did ravish and carnally know' do not charge it was *against her will except by implication* \* \* \* and they do not even sufficiently charge that the act was forcibly perpetrated in the absence of the words 'against her will.'" *State* v. *March,* 132 N. C. 1000. See also *State* v. *Powell,* 106 N. C. 635; *State* v. *Johnson,* 67 N. C. 55; *State* v. *Jim,* 12 N. C. 142.

The doctrine early announced in this State in *Sullivant* v. *State,* 8 Ark. 400, is supported by all the text writers on criminal law and procedure, and all the well-considered adjudications in England and America, and it should not be overruled. The State, by omitting the words "against her will' has failed to exclude the possibility that the act of sexual intercourse was with the consent of the prosecutrix. The indictment therefore failed to charge the plaintiff in error with the crime of rape. No man under our decisions can be convicted of a crime with which he has not been charged. *Barton* v. *State,* 29 Ark. 68; *Warner* v. *State,* 54 Ark. 664; *Childs* v. *State,* 15 Ark. 204; *Sweeden* v. *State,* 19 Ark. 205; *Fletcher* v. *State,* 12 Ark. 170; *Davis* v. *State,* 45 Ark. 470.

As an essential of the crime has been left out of the charge, the error may be raised here for the first time. *State* v. *March,* 132 N. C. *supra.*

Under both our State and Federal constitutions the "accused shall enjoy the right to be informed of the nature and cause of the accusation against him." Const. U. S. art. 6; Const. Ark. art. 2, sec. 10. "No person shall be deprived of life without due process of law." Const. Ark., art. 2, sec. 8.

If I am correct, and there is no indictment, then it would seem that the complainant is about to be deprived of life under forms of law, but without *due process.*

RIDDICK, J., concurs.