Bittle vs. Stuart, Judge.

DIRECTIONS FOR A DECREE.

BITTLE VS. STUART, Judge.

1. JUDICIAL NOTICE: *United States surveys. County boundaries, etc.*
Courts take judicial notice of the United States system of land surveys; with the base lines, meridians, townships and ranges thereby established, and the relative positions of the sections in the townships; also of the division of the state into counties, and the boundaries of the counties as described in public acts; and also of the principal geographical features of the state, including the navigable rivers.

2. COUNTIES: *Area.*
An act of the legislature reducing the area of a county below 600 square miles, is unconstitutional.

3. STATUTE: *Indivisible, void in part, void in whole:* CLARK COUNTY. *Act abolishing, void.*
The act of the legislature of April 3, 1879, distributing portions of the

territory of Clark county to other counties, is an indivisible act, and can not take effect in part and not in whole. It is also void because it can not be ascertained from its terms, with any reasonable certainty, what territory is assigned to Dallas county.

4. SAME:

An act of the legislature conflicting with the constitutional provision that until a designated time a certain county shall be a representative district with two representatives, and, with certain other counties, shall compose a senatorial district, is void.

PETITION FOR MANDAMUS.
*Rice & Whipple*, for petitioner.

EAKIN, J. The petitioner, W. A. Bittle, is a suitor in a cause pending in the Clark county circuit court, before the Hon. H. B Stuart, judge. He shows that on the third day of June, 1879, the cause was ready for trial and judgment, and that. the court being in session, he moved to proceed with the same. The court refused to do so, on the ground that it no longer had jurisdiction of the case pending, because of the act of the general assembly, which went into force on that day, entitled "An act to attach the territory of Clark county to the counties of Dallas and Nevada, and for other purposes."

Prayer for an alternative writ of mandamus, and that on the hearing he may be commanded to hear and decide said cause and render judgment. A transcript of the record of the proceedings in said cause, filed with the petition, sustains its allegations.

The response of the judge sets up the act, and disclaims jurisdiction; to which the relator demurs. The validity of the act is the sole question presented.

This act is found printed in the pamphlet *Acts of 1879, p. 132*, entitled as above. It did not receive the approval of

15

Bittle vs. Stuart, Judge.

the governor, but, if valid, went into operation by his failure to file the same, with his objections, in the office of the secretary of state; and to give notice thereof, by public proclamation, within twenty days after the adjournment of the legislature. (*Const. of 1874, sec. 15, of Art. 6.*)

*Section 1* of the act provides: " That all that portion of the county of Clark, included in the following boundaries, shall be, and the same is hereby, declared attached to the county of Dallas, viz: Beginning at the mouth of the Missouri river, thence up said river to the mouth of Terre Noir creek; thence up said creek to the place where the township line between townships seven and eight crosses said creek; thence west with said township line to Antoine river; thence up said river to the county line between Pike and Clark counties; thence easterly with said county line to Hot Spring county; thence southerly with said line to the place of beginning."

*Section 2* enacts, " that all that part of Clark county lying west of the Terre Noir creek, and south of township line between townships seven and eight south, be, and the same is hereby, attached to the county of Nevada."

*Section 3* transfers all the records of Clark county to the custody of the clerk of Dallas county, and makes them records of the latter county.

*Section 4* provides that all civil and criminal actions pending in the Clark circuit court shall be proceeded with in the circuit court of Dallas county, with leave to parties all resident in the portion assigned to Nevada, to have the cases transferred there from Dallas.

The *5th section* provides for the removal of the criminal cases to Nevada, if the defendant *resides* in the territory assigned to that county.

By *section 6*, pending administrations and guardianships

are made transferable to Nevada county, when the *administrator* or *guardian* may *reside* in that portion.

Other sections are directed to the regulation of details, with regard to change of officers, collection of taxes, the burdens of the old debt, etc., as if the effect of the act, in contemplation of the legislature, was to merge the county of Clark into the county of Dallas, save a portion to be transferred to Nevada.

Nowhere is it expressly said that the county of Clark is abolished—nor that the transfers of territory exhausted *all* the old territory of Clark county.

The courts take judicial notice of the United States system of land surveys; with the base lines, meridians, townships and ranges thereby established, and the relative positions of the sections in the townships; also of the division of the state into counties, and the boundaries of those counties as described in public acts; and also of the principal geographical features of the state, including the navigable rivers.

The Little Missouri river constitutes the whole southern boundary of the county of Clark, extending from its confluence with the Ouachita up the channel, westwardly to the mouth of the Antoine, which comes in from the north. Thence the western line of Clark county proceeds up the channel of the Antoine, between Pike and Clark counties, to and beyond its intersection with the township line between seven and eight. Whatever may be the position of the Terre Noir within the county, it is apparent that the portion of Clark assigned to Nevada is definite, or may be made so by a surveyor tracing Terre Noir creek from its mouth to said township line. This is a clean cut of territory, and if the object of the act had been merely to change the boundary between Clark and Nevada counties, it

might suffice.   But this portion of the act is so inseparably interwoven with the others, by special provisions, and evident common purpose, that it can not stand alone, as a mere transfer of territory.

Turning to the portion assigned to Dallas, we arrive at the same point, the intersection of the Antoine with said township line between seven and eight.   We are already at "the county line between Pike and Clark counties," and need not, as the act directs, go up the river to reach it. Ascending, however, the Antoine continues to form the county line between Pike and Clark counties until it crosses the range line between ranges twenty-three and twenty-four west, in township six south; thence, leaving the Antoine, said county line runs due north with said range line to the northwest quarter of township six south, twenty-three west; thence east on the township line two sections; thence north to the northwest quarter of section four, in township five south, range twenty-three west, where it abuts upon the county line of Montgomery county, without touching Hot Spring county at all; and having extended about nine miles, almost due north from the point where it left the Antoine (*Acts of 1873, p. 186*); thence the county line of Clark, no longer the line between Pike and Clark, runs east, along the southern boundary of Montgomery, to a corner of Hot Spring; thence east and south in a zigzag course, across the Ouachita to the northwest corner of Dallas county; thence south about twelve miles; thence west again to the Ouachita; thence southwardly with said last named river to the mouth of the Missouri, the point of beginning.

This will appear more plainly by the annexed diagram. (See diagram "A.")

It is evident at a glance, that the description of the terri-

tory assigned by the act to Dallas county will not plat without violence to the language. A line can not possibly run eastwardly from any point of *the county line between Pike and Clark counties* on the Antoine river, with said line, since that line, on leaving the river, runs directly *north.* There is nothing in the language of the act by which to correct the error or reconcile the discrepancy. The act itself does not profess, in terms, to dispose of *all* of the county of Clark, nor to abolish it, although it does assume to destroy its organization. A line run eastwardly from the point where " said " county line leaves the Antoine to Hot Spring county, would leave still in the old county of Clark a considerable territory, but far short of six hundred square miles. In this view, the act would be unconstitutional. (*Sec. 1, Art. XIII.*)

There is nothing to warrant a construction of the act which would discard the words, " eastwardly with said county line to Hot Spring county," and to read, instead, " thence with the present line of Clark county to Hot Spring county, and on southerly with said line to the beginning." Such a description would be too vague and general, and not in such terms as the legislature would be apt to use. It would wholly omit the notice of the contiguous counties of Montgomery and Dallas, which form as important parts of the boundary as does Hot Spring. We can not make language for the law-making power, when the means of construing the language used, in any other than its literal and grammatical sense, is not furnished by the act itself, or unmistakably indicated by the circumstances. If we discard the reading " eastwardly," the act becomes too vague and uncertain to be effective, and is void on that account. As already indicated, the sections are so interwoven, in object and purpose, that all must stand or fall together.

If, however, we might adopt the construction of the act, which would dispose of the whole territory north and east of the Terre Noir to Dallas, it would be a complete annihilation of the county of Clark; and very grave considerations would arise thereupon.

Counties are political agencies essential to the existence of all American free governments.    No state can dispense with the system of government by counties, nor deprive any portion of its territory of all county organization. Where no constitutional inhibitions exist, the counties are under the control of the sovereign power, which may, at pleasure, alter their boundaries, change their names, burden them with obligations, or even, it is said, abolish any particular one or more; furnishing, however, another county organization for all parts of the territory.    We have no disposition to question these general principles, and will, therefore, look only to the inhibitions of the constitution of 1874.

Clark is an old county, and was in existence at the time of the adoption of the constitution. It is recognized in that instrument by name.    It is not necessary now to construe *Art. XIII, sec. 1,* which provides that no county *now established* shall be reduced to an area of less than six hundred square miles, nor to less than five thousand inhabitants. Nor that clause of *sec. 1, Art. VIII,* which provides that each county now organized shall always be entitled to one representative in the house of representatives.    Whether these clauses prohibit the legislature for all time from destroying the identity of an original county, or only go to secure to them area, inhabitants and representation whilst they exist, is a grand question to be decided when it arises. There are positive restrictions, more direct in their language, and limited in time.

Our whole political machinery rests upon representation through counties. The constitution provides for apportionments of representation, to be made at stated times in the future; but, meanwhile, makes a provisional arrangement, for the present, to continue unchanged until after the federal enumeration, to be made in 1880. Until that time it is imperative that "the county of Clark shall elect two representatives" This takes the matter temporarily out of the sphere of legislation, and if this act stands, it would sweep two representatives out of the hall of the house of representatives. If that might be done for one county, it might be for many, and the provisional apportionment wholly disarranged.

Again, the same provisional arrangement is made for the same period in regard to the senate. It is provided that "the counties of Clark, Pike and Montgomery shall compose the Thirtieth district, and elect one senator." (*Art. VIII, sec. 192.*) Nevada, with Hempstead, forms the Twentieth district; Dallas, with Lincoln and Dorsey, the Sixteenth. Certainly the legislature has no power to say that Clark county shall be transferred to, and form part of, either the Twentieth or Sixteenth districts. How, then, can it be possible that the whole territory of Clark shall be partitioned out to other districts, leaving the Thirtieth to consist of Pike and Montgomery alone?

The constitution of 1868 made a similar provisional apportionment of representation amongst the counties. Whilst it was in force, the question arose of the power of the legislature to change the boundary lines between the counties of Prairie and Monroe. (*Howard et al. v. McDiarmid, 26 Ark., 100.*) The court held that whilst the integrity of the counties should be preserved, with their legitimate area and

population, it was no violation of the constitution to change the county boundaries within the constitutional restrictions. The constitution itself recognizes the right to change boundaries, and whilst the same counties are left organized to fulfill the conditions of the senatorial and representative apportionments, as counties, the boundaries might still be subject to alteration; and thus all the parts of the constitution might find room for harmonious operation. The principles of this decision do not support, but plainly militate against, the idea that the legislature may strike a county out of a district altogether.

The conclusion of the court is, that the said supposed act of April 3, 1879, is an indivisible act, and can not take effect in part and not in whole; that it is void, because it can not be ascertained from its terms, with any reasonable certainty, what territory is assigned to Dallas county; that one possible construction of it would render it unconstitutional, as reducing the area of Clark county below the proper limits; and that another possible construction would conflict with the constitutional provisions, which provide that until after the federal enumeration of 1880, Clark county shall be a representative district, with two representatives; and, with the counties of Pike and Montgomery, shall compose the Thirtieth senatorial district.

Let the peremptory mandamus issue, as prayed.