Johnson v. The State.

---

·JOHNSON v. THE STATE

1. PRACTICE: *Motion for new trial waives exceptions.* ·
   The filing of a motion for new trial waives all previous exceptions not expressly embodied in it.

2. PRACTICE IN SUPREME COURT: *Motion for New Trial*: *Bill of Exceptions.*
   The cases of *Farquharson v, Johnson*, 35 *Ark.*, 536. *Gaines v. ·Summers*, 39 *Ark.*, 482, and all others holding that the bill of exceptions must embody or refer to and identify the motion for a new trial, are, on this point, overruled: and hereafter this court will consider the merits whenever the record contains a motion for new trial and shows that it was filed and overruled, and the bill of exceptions shows that the overruling was excepted to.

3. CRIMINAL PRACTICE: *Serving copy of indictment on defendant.*
   Where a defendant pleads to an indictment, declares himself ready for trial, and a jury is empannelled, and the trial commenced, it is too late for him then to object that he has not been furnished with a copy of the indictment.

Johnson v. The State.

APPEAL from *Pulaski* Circuit Court.

Hon. F. T. VAUGHAN Circuit Judge.

*J. C. Barrow*, for appellant.

Appellant was not furnished with a copy of the indictment 48 hours before trial, *Const.* 1874, *Art.* 2 *Sec.* 10; *Gantt's Digest, Sec.* 1825, and he refused to waive this right.

The evidence was not sufficient to sustain the verdict, reviews the decisions of this court on the subject of new trials, and contends that in criminal cases, especially where life is involved, that the verdict should be sustained by a preponderance of testimony, such as to admit of no reasonable doubt that the defendant was the guilty party. 7 *Hum.*, 483; 4 *Caldwell*, 175; 3 *Heiskell.*, 86; 5 *Ark.*, 640; *Ib.*, 407; 2 *Id.*, 360.

*C. B. Moore*, Att'y Gen'l, for the State.

By pleading not guilty, and proceeding to trial, without objecting that he had not been furnished with a copy of the indictment &c., appellant waived his right thereto. 29 *Ark.*, 118; 42 *Id.*, 94; 1 *Bishop Cr. Law*, 6th Ed., *Sec.* 997; 1 *Bishop Cr. Pr.*, 3d Ed. Sec's. 126, 959 *a .and cases cited*; 8 *Ohio St.*, 98; 8 *Ohio,,*297; *Walker, Miss.*, 396; 6 *Mo.*, 428; 3 *How. Miss.*, 420·

The evidence fully sustains the verdict. The instructions of the court were admitted to be correct and so were not set out in the bill of exceptions.

SMITH, J.    Rush and Carrie Johnson were jointly indicted for the murder of John Wall. After the conclusion of the testimony for the State, a *nolle prosequi* was entered as to Carrie. Rush was found guilty of the highest degree of that crime and after the denial of motions for a new trial and in

arrest of judgment, was condemned to suffer the extreme penalty of the law.

The motion for a new trial is not incorporated in the bill of exceptions, nor referred to as contained in some other part of the transcript. But the record notes the filing and over-ruling of such a motion; the motion itself is copied in the transcript; and the bill of exceptions shows that the prisoner excepted to the ruling of the court in that particular. According to several decisions of this court no question is before us as to anything that occurred at the trial, unless a certain matter, hereafter to be noticed, preliminary to the trial, can be raised by the motion in arrest.

The filing of the motion for a new trial waived all exceptions previously taken and not expressly embodied in it. And the assignment of errors specified in that motion not being preserved in the manner prescribed by the practice of the court, the defendant would have nothing to stand upon except his motion in arrest, which ordinarily brings up only the sufficiency of the indictment.

1. Motion for New Trial. Waives exceptions,

As this is a case of life and death, we feel constrained to review our previous decisions on this subject and either justify them, or recede from them. We are aware that those decisions have not given unbounded satisfaction to the profession.

The first case in our reports that directly decided that a motion for a new trial does not become a part of the record merely by being filed, as do pleadings, was *White v. Prigmore*, 28 *Ark.*, 450. In that case there was no bill of exceptions whatever; and it was impossible for the court to say whether the inferior court had committed any error or not. This was followed by *Nisbett v. Brown*, 30 *Id.*, 585, in which there was a bill of exceptions, but it made no reference at all to the motion for a new trial. And it was held that, under those circumstances, the motion was no part of the record.

2. Practice in Supreme Court: Motion for new trial: Bill of exceptions.

Johnson v. State.

These cases we adhere to. But in *Farquharson v. Johnson*, 35 *Ark.*, 536, the court went a step further. There the record entries showed the filing and denial of a motion for a new trial, which was copied in the transcript. The bill of exceptions also stated that the losing party had filed such a motion, that it was denied and that he excepted; but it did not set out the grounds of the motion, nor identify the one to which it referred as the one that appeared in the transcript. This last case was approved in *Carroll v. Sanders*, 38 *Id.*, 216, though it was not necessary to the disposition of the case, there being in reality no bill of exceptions. But it was followed in *Gaines v. Summers*, 39 *Id.*, 482, and has been frequently acted on since.

The cases of *Farquharson v. Johnson*, of *Gaines v. Summers*, *supra*, and all others decided upon the same considerations are now overruled. We will consider the merits whenever it appears from the record proper, that a motion for new trial was made and denied, and from the bill of exceptions that the appellant excepted to the action of the court in that respect, provided such a motion is contained in the transcript. In other words we will presume that the motion sent up by the clerk in his certified transcript is the same motion that was filed, overruled and excepted to in the court below.

3. CRIM-
INAL PRAC-
T I C E :
Serving
copy of in-
dictment on
defendant.

It was alleged in the motion for a new trial, that no copy of the indictment had been served on the prisoner or his counsel forty-eight hours before his arraignment, as required by Sec. 1825 of Gantt's Digest. The case coming on for trial upon the plea of "not guilty" and a jury having been selected and sworn, while the counsel of the State was in the act of opening the case to the jury, it occurred to the court to ask if this statute had been complied with. By inquiries addressed to the Clerk, Sheriff and Attorneys engaged in the cause, it was ascertained that the defendant had not been served with a copy. The court then asked if defendant's

Johnson v. State.

counsel would waive this right, and they declined to do so. The court ordered the trial to proceed, remarking that by pleading to the indictment and announcing himself as ready for trial, the defendant had already indirectly waived the privilege.

It was intimated in *Dawson v. State*, 29 *Ark.*, 118, and in *Wright v. State* 42 *Id.*, 94, that rights of this nature being merely a provision for the convenience of the prisoner—may be waived either directly or indirectly by not applying for the thing. Mr. Bishop (1 *Cr. Law*, 6*th Ed. Sec.* 997) says: " If a defendant suffers himself to go to trial without having received a copy of the indictment, even where the law expressly directs such a copy to be furnished him, he can not afterwards take the objection that it was not furnished." Compare also 1 *Bishop Cr. Pro. 3d. Ed. Sec's.* 126, 959 *a*, where other cases are collated in support of the same proposition.

In *Fouts v. State*, 8 *Ohio St.*, 98, the Constitutional and statutory provisions on this subject being the same in substance as ours, the court says: " If a defendant in a criminal prosecution wishes to avail himself of such omission of duty on the part of the State, he must do it on motion before trial, or interpose it as an objection to being put on his trial. * * * * It being of such a nature as to be a subject of waiver, if the party accused proceed to trial without making the objection, it is a waiver of the omission and he cannot after trial, interpose the objection to affect the validity of the proceedings."

In *Smith v. State*, 8*th Ohio*, 297, the court say : " In any respect except in relation to jurisdiction, a party may waive provisions in the law intended for his benefit, or make any agreement for the disposition of his case whether civil or criminal as a rule."

" If the accused insist upon such a copy, or rather if he do

not waive his right in this respect, and is forced to trial without it and against his own consent, it would most clearly lay the foundation for a motion for a new trial; and if the facts appear on the record, a motion in arrest of judgment or a writ of error might be sustained. Such is not the case here. For aught that appears the plaintiff in error was placed on his trial with his own consent. There was no objection for the want of a copy of the indictment. Such copy must then be considered as waived, and it does not lie in his mouth to say that it was not furnished. To suppose the Legislature intended a copy to be delivered when it was not required, but waived, would be to suppose that they intended to compel the performance of an act without any definite object, use or benefit, and to deprive the accused of the right to agree when his trial should take place.

In *The State v. Johnson, Walker, Miss.*, 396, the court say : " Although this is a privilege which the law, in its benignity, extends to criminals in capital cases, yet it is a privilege which the prisoner may waive, and his pleading not guilty and not having claimed the privilege amounts to a tacit waiver, and he cannot afterwards take advantage of it, for his pleading has caused the objection."

In *Lisle v. The State*, 6 *Mo.*, 426, arising under a statute precisely similar to ours, the court say : "The duty is imposed upon the clerk by our statute, and is obviously for the purpose of enabling the defendant to prepare his defense. If the clerk neglects his duty in this particular the defendant has undoubtedly a right to delay his trial until the statute is complied with; but if he pleads without such copy of the indictment and makes no objection for want of such copy, can he, after verdict, claim a new trial for such cause? I think not." See also *Loper v. The State*, 3 *Howard, Miss.*, 429.

It was also alleged that the verdict was contrary to the

evidence.   The deceased was an overseer or manager of a plantation.   The defendant was living in adultery with Carrie Johnson.   The deceased had had a quarrel or difficulty with Carrie about 2 or 3 P. M., of the same day he was killed, and it is probable that he had struck her.   Carrie was greatly enraged thereat, swore at him and followed him about from place to place on the premises, abusing him. The deceased paid no attention to her, but went on with his work.   Rush also was highly incensed at the treatment Carrie had received and made threats freely against Wall—said he would kill him if he struck her again.   Rush saddled a mule, stated that he was going to the house of one Ross after a pistol, and rode off in that direction.   After night, it being Saturday, the deceased went to the store-room for the purpose of issuing rations to the laborers on the plantation.   Carrie had no business in the store-room at the time.   She was the cook for the white persons on the place and was fed from the same table.   But she intruded and was attempting to raise a disturbance with Wall.   She was ordered out and the door locked.   There were several laborers locked in with Wall and at the time he was shot, he was in the act of stooping down to draw molasses from a barrel, which stood about three feet from a window.   This window had a missing pane of glass.   The shot was fired from the outside by a person standing at the window.   Robert Davis, who had drawn his supplies, was leaving the store-room.   He was within six feet of the assassin, and it being a star-light night, recognized Rush with a bright pistol.   This witness saw Rush when he fired and saw him run away in the direction of the cow-pen.   Presently he returned in company with others, who were attracted by the firing, and inquired what had happened.   Davis remarked, "Listen to the fellow, asking what is the matter, when he shot Mr. Wall himself."

Jane Wilkes was in the cow-pen milking when the pis-

tol fired. She started to the house and met Rush, who had apparently just leaped over the fence and over a wood-pile near at hand. One of the defendant's witnesses, who was also at the cow-pen when the shot was fired, did not know where Rush was at that time, but saw him directly afterwards near the gate of the cow-pen. Rush stated to a deputy-sheriff next day that he was milking the cows when the report of the pistol was heard. This statement was unquestionably false in the light of all the testimony. The women were milking and Rush was not present.

Wall died in a day or two from the effects of the wound.

These are the salient features of the evidence, and they point unmistakably to the guilt of the defendant.

The motion for new trial further alleged that the verdict was contrary to law. This assignment requires no notice. It must mean either that the Court misdirected the jury, or that they disregarded instructions. But the bill of exceptions shows that the charge of the court was admitted to be correct and for that reason it is not set forth at all,

Judgment affirmed.