CLARK *v.* STATE.

Opinion delivered November 2, 1925.

1. INDICTMENT AND INFORMATION—STATUTORY CRIME.—The general rule is that an indictment upon a statute must state all the facts and circumstances which constitute the statutory crime, so as to bring the accused within the provision of the statute, but it is generally sufficient if it contains the substance thereof.

2. HOMICIDE—MURDER IN FIRST DEGREE—INDICTMENT.—An indictment charging that defendant and others named wilfully and feloniously killed another, while engaged in the commission of the crime of robbery, charges the crime of murder in the first degree, under Crawford & Moses' Dig., § 2343.

3. COURTS—SPECIAL TERM OF COURT TO TRY PERSONS IN JAIL.—Crawford & Moses' Dig., §§ 2218, 2220, relating to calling special terms to try persons in jail, *held* complied with.

4. CRIMINAL LAW—PETITION FOR CHANGE OF VENUE—CREDIBILITY OF AFFIANTS.—In determining the credibility and means of knowledge of the supporting affiants on a motion for a change of venue, the court was authorized to inquire, not only as to whether the affiants had sworn or were likely to swear falsely, but into their motives, intent, and feelings, and their opportunities and means of knowledge as to existing prejudice, in order that the court might determine whether they were credible persons within the statute.

5. CRIMINAL LAW—JUDICIAL NOTICE.—The courts take judicial notice of the division of counties into townships.

6. CRIMINAL LAW—PETITION FOR CHANGE OF VENUE—DISCRETION OF COURT.—In a murder prosecution, the court did not abuse its discretion in overruling defendant's motion for a change of venue on the ground of prejudice of the inhabitants, under Crawford & Moses' Dig., § 3088, where supporting affiants were sent out for the purpose of being able to support defendant's petition for change of venue, and knew very few of the persons to whom they talked, and were necessarily hurried in their investigation, and hence were not "credible persons" within the meaning of the statute.

7. HOMICIDE—SUFFICIENCY OF EVIDENCE.—In a prosecution for murder, alleged to have been committed while robbing a bank, under Crawford & Moses' Dig., § 2343, evidence *held* sufficient to warrant a verdict of guilty of murder in the first degree.

8. HOMICIDE—MURDER IN FIRST DEGREE—VALIDITY OF STATUTE.—Statutes which enact that murder committed in the perpetration of robbery, burglary and other crimes shall be deemed murder in

the first degree are valid enactments and do not violate any provision of the State or United States Constitution.

9. HOMICIDE—EVIDENCE.—In a prosecution for murder while engaged in robbing a bank, evidence *held* to warrant the jury in finding that deceased was killed by defendant and his confederates in immediate connection with the robbery, and before their flight, thereby justifying a verdict of guilty of murder in the first degree.

10. HOMICIDE—EFFECT OF VERDICT.—In a prosecution of defendant for murder while engaged in robbing a bank, the court properly imposed the death sentence where the jury were instructed as to their right to render a verdict of life imprisonment, under Crawford & Moses' Dig., § 3206, and yet returned a verdict of guilty of murder in the first degree as charged in the indictment.

11. HOMICIDE—REFUSAL TO CHARGE AS TO LOWER DEGREES.—In a prosecution for murder in first degree shown to have been committed while defendant was engaged in robbing a bank, refusal to charge as to murder in the second degree or any lower degree of homicide was not erroneous.

12. CRIMINAL LAW—DUTY OF COURT TO INSTRUCT JURY.—Under Const., art. 7, § 23, and at common law, it is the duty of the court to instruct the jury upon the law, and the jury is required to accept the ruling and be guided by it.

13. CRIMINAL LAW—POWER OF JURY.—The jury may disregard the evidence and acquit a person whom the evidence shows to be guilty of the crime charged in the indictment, and may disregard the instructions of the court and find for a lower degree of homicide than is warranted by the evidence.

14. CRIMINAL LAW—INSTRUCTION—INVASION OF JURY'S PROVINCE.—Instructions requiring the jury to convict or acquit the defendant of murder in the first degree, and no other offense, is not violative of Const., art. 7, § 23, as invading the province of the jury or as a comment on the evidence, where there was an entire absence of evidence tending to prove any grade of homicide other than that of first degree.

15. CRIMINAL LAW—JOINT INDICTMENT—ORDER OF TRIAL.—Where defendants, jointly indicted for murder, elected to sever for trial, Crawford & Moses' Dig., § 3140, requiring in such case that the defendants shall stand for trial in the order in which their names appear upon the indictment, is directory merely.

16. INDICTMENT AND INFORMATION—COPY OF INDICTMENT.—The fact that the copy of the indictment served on defendant did not contain the name of the foreman of the grand jury and date of filing was immaterial where it was complete in all other respects, and the defendant was informed of the charge so that he might prepare for trial.

17. CRIMINAL LAW—WAIVER OF RIGHT TO COPY OF INDICTMENT.—The privilege of having a copy of the indictment served on him was waived by the defendant where he filed a motion to quash the indictment and one to change the venue.

18. HOMICIDE—MURDER IN COMMITTING ROBBERY—DEFENSE.—The fact that defendant, in perpetration of robbery, had no intent to commit murder would be no defense, under Crawford & Moses' Dig., § 2342, providing that all murders committed in perpetration of robbery, etc., shall be murder in the first degree.

Appeal from Benton Circuit Court; *W. A. Dickson*, Judge; affirmed.

*W. H. Spencer* and *Vol T. Lindsey*, for appellant.

*H. W. Applegate*, Attorney General, and *John L. Carter*, Assistant, for appellee.

HART, J. Tyrus Clark appeals from a judgment of conviction of murder in the first degree where a sentence of death was pronounced in conformity with the verdict of the jury trying him.

The body of the indictment is as follows:

"The grand jury of Benton County, in the name and by the authority of the State of Arkansas, accuse John Burchfield, Boyd Jewel, Elva McDonald and Tyrus Clark of the crime of murder in the first degree, committed as follows; to-wit:

"The said John Burchfield, Boyd Jewel, Elva McDonald and Tyrus Clark, in the county of Benton and State of Arkansas, on the eleventh day of June, 1925, then and there being, and while acting and conspiring together and having a common purpose and design to perpetrate the crime of robbery and effect their escape, and while executing the purposes of said conspiracy aforesaid, did unlawfully, feloniously and violently take from the Bank of Sulphur Springs, a corporation, situated and doing a banking business in the town of Sulphur Springs, in the county and State aforesaid, the sum of nine hundred ($900) dollars, gold, silver and paper money—current and lawful money of the United States of America; the property of said Bank of Sulphur Springs, a corporation, and of the value of nine hundred ($900) dollars,

in the presence of one S. O. Whaley, the lawfully authorized and acting cashier of said Bank of Sulphur Springs, a corporation, and having the care and control of said sum of money aforesaid, forcibly and against his will and by intimidating and putting fear in him, the said S. O. Whaley, and while perpetrating said crime of robbery as aforesaid, feloniously, wilfully, and with malice aforethought, and with premeditation and deliberation did kill and murder one Lou Stout, with a certain gun loaded with gunpowder and leaden balls and then and there held in the hands of him, the said Tyrus Clark; the said Boyd Jewel, John Burchfield and Elva McDonald being then and there present aiding and abetting and consenting to aid and abet the said Tyrus Clark in the commission of said homicide, from the effect of wounds so inflicted, he, the said Lou Stout, died on the 12th day of June, 1925, against the peace and dignity of the State of Arkansas.''

The general rule is that an indictment upon a statute must state all the facts and circumstances which constitute the statutory offense so as to bring the accused within the provisions of the statute; but it is generally sufficient if it contains the substance thereof.

The indictment in the present case was returned under § 2343 of Crawford & Moses' Digest, and every element of murder in the first degree as defined by the statute is alleged in the indictment, and the court properly ruled that the indictment charged the crime of murder in the first degree and put the defendant on trial for that offense. The indictment fully charges the offense of murder in the first degree by alleging in proper words that Tyrus Clark and other named persons wilfully and feloniously killed Lou Stout while they were engaged in the commission of the crime of robbery. See *Henry* v. *State*, 151 Ark. 620, and *Kelly* v. *State, ante* p. 289.

It is claimed by counsel for the defendant that the court should have quashed the indictment because the defendant was tried at a special term of the court which was not called as provided by law.

A call for a special term of the court to be held in Benton County on the 29th day of June, 1925, was signed by W. A. Dickson, judge of the Fourth Judicial Circuit of Arkansas on June 18, 1925, and the call was entered of record. The call recites that it had been certified to the undersigned judge that John Burchfield, Boyd Jewel, Elva McDonald and Tyrus Clark were confined in the Benton County jail, charged with the crime of murder in the first degree for killing Lou Stout on or about June 11, 1925, and for the robbery and burglary of the Bank of Sulphur Springs, Arkansas, on the same day.

The call further recites that it is necessary and expedient that a special term of the circuit court of Benton County be called for the purpose of investigating and disposing of said charges, and it appearing that no term of the circuit court of the Fourth Judicial District in any county convenes prior to the first Monday in August, 1925, and that the regular term of the Benton Circuit Court convenes on the third Monday in September, 1925, it is by the undersigned judge on June 18, 1925, ordered that a special term of said circuit court be convened and held in the circuit court room in Bentonville, Benton County, Arkansas, on Monday, June 29, 1925, at ten o'clock A. M. for the purpose of investigating and disposing of said charges in the manner prescribed by law. It was ordered that the sheriff summon a grand jury of sixteen qualified electors to attend at said special term of the court, that the order for the call be entered of record, and that a certified copy be served upon the prosecuting attorney of the Fourth Judicial Circuit. The order was entered upon the records of the circuit court, and the record also showed that the prosecuting attorney acknowledged the service of summons upon him of the copy of the order on June 18, 1925. The certificate of the clerk shows that the call was placed upon the record by him on June 18, 1925, together with the acknowledgment of service by the prosecuting attorney.

Thus it will be seen that the special call was made by the circuit court under the provisions of § 2218 of

Crawford & Moses' Digest, providing that the judge of the circuit court may at any time hold a special term for the trial of persons confined in jail by making out a written order to that effect and transmitting it to the clerk, who shall enter it on the records of the court.

Section 2220 provides that the judge ordering the special term shall cause a notice thereof to be served on the prosecuting attorney of the circuit ten days before the commencement of such special term.

The prerequisites of the statute were complied with in the case at bar, and the requirements laid down by this court as to a call for a special term to try persons in jail were complied with. *Beard* v. *State,* 79 Ark. 293; *Hill* v. *State,* 100 Ark. 373; *Reece* v. *State,* 118 Ark. 310; *Bell* v. *State,* 120 Ark. 530; and *Harris* v. *State, ante* p. 627.

The next assignment of error is that the court erred in refusing to grant the defendant a change of venue. The defendant filed a motion for a change of venue on the ground that the minds of the inhabitants of Benton County were so prejudiced against him that a fair and impartial trial could not be had therein. His petition was duly verified by his affidavit, and the affidavits of two qualified electors, actual residents of Benton County and not related to the defendant in any way were also filed as required by § 3088 of Crawford & Moses' Digest.

The statute requires that the petition be supported by the affidavits of two credible persons. This court has held that the supporting affiants are not credible persons within the meaning of the statute where they do not possess the necessary means of knowledge as to the facts to which they swear. In discussing the question in *Price* v. *State,* 71 Ark. 180, the court said:

"It may happen, and does frequently happen, that the line of demarcation between evidence as to the credibility and of sources of information is difficult to be observed. Therefore, it is necessary that the examination of such witnesses should be set forth in detail in the bill of exceptions. Otherwise, the appellate court must take the examination to have been made within the

proper limits, and hold that the ruling of the trial court is correct. This is the status of this particular controversy, and under the rule we must hold that there was no error in this respect. A witness may be truthful and intelligent in the ordinary acceptance of these terms, and yet, on examination before the court, it may be made to appear that he has made his affidavit carelessly, without really possessing any definite and reasonable information as to the public feeling toward the defendant. Then the credibility of the witness is involved, for there is little difference between the effect of false testimony and testimony recklessly given.''

In determining the credibility and means of knowledge of the supporting affiants, the circuit court was authorized to inquire, not only as to whether the affiants had sworn, or were likely to swear falsely; but into their motives, intent, feelings and their opportunities and means of knowledge as to the existing prejudice, in order that the court could determine whether they were credible persons under the statute in matters of this nature.

It cannot be said that the action of the court in overruling the defendant's motion for a change of venue was without legal evidence to support it. In this connection it may be stated that Benton County is a large county, containing thirty-four townships. Our Constitution provides for the division of the State into counties and the boundaries of the counties to be fixed by the Legislature under the restrictions provided for in the Constitution. *Bittle* v. *Stuart*, 34 Ark. 224. The division of counties into townships is made necessary by the Constitution of the State. *St. L., I. M. & S. Ry. Co.* v. *State;* 68 Ark. 561. These cases also hold that the court will take judicial notice of these facts.

The Bank of Sulphur Springs in Benton County, Arkansas, was robbed on the 11th day of June, 1925, and Lou Stout was killed while the robbers were attempting to escape. A call for a special term of the court to be convened on the 29th day of June, 1925, was made by the circuit judge on June 18, 1925. The circuit court

convened pursuant to the call, and the grand jury returned an indictment against the defendant and others on the 30th day of June, 1925, charging them with the murder of Lou Stout. On the 7th day of July, 1925, a day of said special term, the defendant filed a petition for a change of venue.

Earnest Poe and W. H. Harris were supporting affiants to his petition. According to their testimony, they were employed by an attorney for the defendant to travel over Benton County to ascertain the condition of the minds of the inhabitants as to prejudice against the defendant. They started on their investigation on the 4th day of July, 1925, and spent three days in traveling over the county. On the 7th day of July, 1925, they were interrogated in open court as to the result of their investigation and made a detailed statement of the various townships which they visited, and what the inhabitants they saw there said about the feeling against the defendant on account of the alleged killing of Lou Stout and the robbery of the bank.

It is true the witnesses visited a good many townships in the county; but, under the circumstances, they were necessarily hurried in their investigation. They admitted that they knew very few of the people with whom they talked. They were sent out for the very purpose of being able to subscribe to an affidavit of the defendant for a change of venue as supporting affiants. The court was justified, under the circumstances, in finding that, when their feelings, motives, and opportunities for finding the true state of mind of the inhabitants were considered, they were not credible persons within the meaning of the statute and the rule above announced. The court might have thought, when their testimony and the surrounding circumstances were considered together, that they simply found an excited feeling among the people they talked with on account of the crime itself, and that no opportunities under the circumstances were given the supporting affiants to ascertain the state of mind of the inhabitants of the county as a whole with regard to

the existence of prejudice against the defendant. Hence it cannot be said that the circuit court abused its discretion in overruling the motion of the defendant for a change of venue. *Dewein* v. *State,* 120 Ark. 302, and *Williams* v. *State,* 162 Ark. 285.

The jury returned a verdict against the defendant of guilty of murder in the first degree as charged in the indictment.

S. O. Whaley was the cashier of the Bank of Sulphur Springs, Benton County, Arkansas, on the 11th day of June, 1925, when the bank was robbed. According to his testimony, about ten minutes before noon on the day in question, he was in the directors' room just back of the main room of the bank with a customer. He was just getting ready to go to dinner, and, as he walked to the door leading into the lobby with the customer, Burchfield drew a pistol on them and held them up. Burchfield then turned them over to McDonald, his confederate, who held a gun on them. Burchfield then went back into the vault and took the money out of the safe. He then made the cashier and the customer go back in the vault and slammed the door on them. The robbers took $933 out of the safe of the vault.

Clara Abercombie, assistant cashier of the bank, was the next witness for the State. According to her testimony she was behind the fixtures and looked up and saw two men enter the bank. She knew just what they were and walked out past them. She heard one of them say, "Let her go." She walked up the street to Mr. Stout's store and told him about the robbery. Stout jumped up and said, "Where is my gun?" When Mr. Stout got his gun she pointed out a car to him and told him that she had passed it on her way to the store. There were two men in the car. The witness did not know them at the time, but has since learned that Burchfield and McDonald were the men who came into the bank and that Boyd Jewel and Tyrus Clark were the men who stayed with the car. When Mr. Stout and the witness looked out, she pointed out the car to him and they saw two men coming

from the bank towards the car. Mr. Stout said, "They have got the money." He then pushed open the door of his store and said, "Hold up, you fellows!" then the men in the car commenced shooting and instantly the glass began to fall. The front of the store was plate glass and it began to fall just after the shots were fired. Mr. Stout then commenced shooting at the robbers and fired five shots at them. The first shooting came from the car.

On cross-examination, the witness told the jury that Mr. Stout was shot before he fired his gun. The men were still shooting when they ran away.

A son of the deceased testified that he saw the defendant in the back seat of the car and saw him draw a shotgun in the direction of his father when he opened the door.

Other witnesses testified that the men in the car were shooting at Mr. Stout.

Mr. Stout died as the result of his wounds. Before his death he told his wife and other persons that the robbers fired at him first, and that he shot five times at them after they shot him.

Boyd Jewel was also a witness for the State. According to his testimony, John Burchfield, Elva McDonald, Tyrus Clark and himself left Oklahoma for the purpose of robbing the bank at Sulphur Springs in Benton County, Arkansas. They had two double-barrel shotguns, a pistol, and two twenty-two rifles. McDonald and Burchfield went into the bank and robbed it. Two shotguns and one rifle were left in the car with the witness and Clark. Clark was to stay in the car and use the gun from the outside if necessary. The witness was to stay at the wheel and take care of the car. Clark was the one who killed Lou Stout.

The defendant was a witness for himself. He admitted that he went with the persons referred to above to rob the bank at Sulphur Springs; but denied that he shot Lou Stout, or that he intended to shoot any one when

they went to rob the bank. He said that the gun he held would not pull off; but that he did not know what was the matter with it. He admitted picking up the loaded shotgun, but denied that he attempted to shoot Mr. Stout. During the shooting the defendant was hit three times. The witness said that he was left out there with the car to help carry out the robbery, but did not intend to kill any one. He intended to see that they got the money and escape, but did not intend to kill any one to do so. The understanding was that the witness was to drive the car away.

The evidence for the State, if believed by the jury, was sufficient to warrant a verdict of guilty of murder in the first degree. The indictment against the defendant was returned under § 2343 of Crawford & Moses' Digest. It provides, among other things, that all murder which shall be committed in the perpetration of arson, rape, robbery, burglary or larceny shall be deemed murder in the first degree. The evidence for the State shows, and the defendant himself admits, that he and his companions conspired to rob the Bank of Sulphur Springs, and the evidence shows that the death of Mr. Stout resulted from gunshot wounds fired by some of the party while in the prosecution of the common object. Indeed, some of the evidence for the State shows that the shots which killed Mr. Stout were actually fired by the defendant. Be that as it may, he was present at the time the shots were fired, and admitted that he was there to see that his companions, who went into the bank for the purpose of robbing it, should get away with the money they secured. Under such circumstances each one of the party would be responsible for every thing done which followed directly and immediately in the execution of the common purpose as one of its probable and natural consequences. Besides, this killing done under such circumstances is made by the express terms of the statute murder in the first degree.

The general rule is that statutes which enact that murder committed in the perpetration of robbery, bur-

glary and other crimes shall be deemed murder in the first degree are valid enactments, and are not in violation of any provisions of State Constitutions or the Constitution of the United States. *Henry* v. *State,* 151 Ark. 620; *Kelly* v. *State, ante* p. 289; Wharton on Homicide, 3 Ed. p. 186, § 126, and cases cited, and Michie on Homicide, vol. 1, p. 120.

It cannot be said that the evidence is insufficient to justify the verdict of murder in the first degree, because it was not done until after the confederates of the defendant had robbed the bank and left it.

It is true that the shooting did not occur until after Burchfield and McDonald had left the bank, but it was done before they got into the car, which was waiting for them, and apparently was done for the purpose of preventing detection and escaping. It was part of the continuous scheme to rob the bank and escape with the proceeds of the robbery. The charge was murder committed in the perpetration of robbery, and the killing occurred just after the robbers had left the bank and before they had gotten into the automobile which was there for the purpose of enabling them to escape. It could not be said that the robbery was consummated until at least the robbers had left the scene of their operations. It was part of their scheme to have an automobile waiting for them. Two of the persons engaged in the perpetration of the robbery were to go into the bank and get the money, and two of them were to stay in the automobile and prevent any one from interfering in the actual robbery. Then the four of them would leave the scene of the robbery in the automobile. The jury was justified in finding that the robbery was not consummated until the four of them had gotten in the automobile and left the scene of the robbery. Therefore, the jury was warranted in finding that Stout was killed by the defendant and his confederates in immediate connection with the robbery and before their flight, and under the statute the defendant was guilty of murder in the first degree.

The jury was instructed as to its rights to render a verdict of life imprisonment under § 3206 of Crawford & Moses' Digest. Hence it may be said that the jury was fully informed in the matter, and yet returned a verdict of guilty of murder in the first degree as charged in the indictment. In such a case the law fixes the punishment at death. *Bullen* v. *State,* 156 Ark. 148. The result of our views is that the verdict was supported by the evidence, and the court properly imposed the death sentence.

The next assignment of error is that the court erred in refusing to charge as to murder in the second degree or any lower degree of homicide. We have just set out the substance of the evidence for the State and for the defendant, and need not repeat it here. It is sufficient to say that there is nothing in the evidence to warrant the jury in finding the defendant guilty of a lower degree of homicide than murder in the first degree.

This court has repeatedly held that where the indictment charges murder in the first degree and the undisputed evidence shows that the accused, if guilty at all, is guilty of murder in the first degree, then it is not error for the court to refuse to give instructions authorizing the jury to return a verdict of guilty of one of the lower degrees of homicide. The reason is that, if there is no evidence to establish a lower degree of homicide than murder in the first degree, the court in properly giving the law must of necessity determine upon whether there is any evidence at all to justify a particular instruction, and it is the duty of the jury to take the court's exposition of the law. *Jones* v. *State,* 52 Ark. 345; *King* v. *State,* 117 Ark. 82; and *Rogers* v. *State,* 136 Ark. 161, and cases cited.

Therefore, we hold that the court properly declined to give the jury instructions as to any lower degree of homicide because there was no evidence upon which to predicate them.

It is earnestly insisted that the court erred in giving instruction No. 1, which reads as follows:

"The defendant is charged in the indictment with the crime of murder in the first degree, and to this charge he has interposed his plea of not guilty, and this forms the issue you are to determine. You must convict or acquit of murder in the first degree and no other offense."

Counsel for the defendant chiefly base their contention upon § 3205 of Crawford & Moses' Digest. This section was a part of the act of December 17, 1838, defining murder. It provides that the jury shall in all cases of murder, upon the conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree. Hence it is contended that the instruction in question is peremptory in its nature, and violates § 23 of article 7 of the Constitution, which provides that judges shall not charge juries with regard to matters of fact, but shall declare the law.

It is contended that the instruction did not leave the jury free to deliberate and fix the degree of murder as contemplated by the statute. It is insisted that to tell the jury that they must find for murder in the first degree or nothing was to withdraw the point from the jury and decide it as a question of law.

It is true that the Supreme Courts of the States of Pennsylvania and of North Carolina have decided that a statute in each State, which is similar to our own, by its terms confers the duty upon the jury to determine the degree of the murder, and that it cannot be taken from them by the court. *Lane* v. *Commonwealth*, 59 Pa. St. 371; and *State* v. *Gadberry* (N. C.), 23 S. E. 477.

This holding, however, is contrary to the weight of authority as will be seen by the citation of cases in a note to 21 A. L. R. at page 619. It is there stated that, in the absence of evidence of a lower grade of homicide than that of which the accused is found to be guilty, he is, by the weight of authority, not entitled to a new trial because

of an instruction to the effect that he should be found guilty of the higher degree or found not guilty.

Among the numerous cases in support of the text there cited is that of *Sparf* v. *United States,* 156 U. S. 51, in which the whole subject was thoroughly considered and the authorities exhaustively reviewed. Judge HARLAN in his strong characteristic way wrote the opinion of the majority, and an able dissenting opinion was written by Judge GRAY. In the first place it may be said that the Supreme Courts of the States of North Carolina and Pennsylvania have attributed to its Legislature a wholly different purpose in enacting a statute like the one under consideration than that given by our own court.

This court has repeatedly held that the statute requiring the jury to find the degree of murder was passed for the purpose of preventing the accused from being sentenced for capital punishment without a special finding of the jury of murder in the first degree. The reason is that the two degrees of murder are not distinct offenses, and no distinction as to the degree is made in charging the offense. So that, if the jury fails to find by its verdict the degree of guilt, it cannot be ascertained by reference to the indictment. Hence it has been held that where a jury returns a verdict of guilty of murder as charged in the indictment, sentence for murder in the first degree cannot be pronounced. *Thompson* v. *State,* 26 Ark. 323; *Simpson* v. *State,* 56 Ark. 8; and *Banks* v. *State,* 143 Ark. 154.

In this connection it may be stated that under another section of the statute a person charged with murder in the first degree may be convicted of any lower degree of criminal homicide. Crawford & Moses' Digest, § 3210. It is manifest from our previous decisions on the subject that this section of the statute was passed for the purpose of enabling the jury to convict the defendant of a lower degree of homicide where the proof fails to sustain the charge of the higher degree, but does support a verdict of guilty of the lower degree.

Under the provisions of our Constitution above referred to as well as under the common law, it is the duty of the court to instruct the jury upon the law, and it is the duty of the jury to accept the ruling and be guided by it. As stated in *Jones* v. *State, supra,* the trial court should in no case indicate an opinion as to what the facts establish; but in properly giving the law the court must of necessity determine whether there is any evidence at all justifying a particular instruction. The rights and power of juries in criminal cases should not be confused. Undoubtedly it is within the power of a jury to disregard the evidence and acquit persons whom the evidence show to be guilty of the crime charged in the indictment. It is also true that a jury might disregard the instructions of the court and find for a lower degree of homicide than that warranted by the evidence, and the State have no remedy. This was pointed out by Chief Justice ENGLISH in *Allen* v. *State,* 37 Ark. 433. In that case the court recognized that a person charged with murder in the first degree might be convicted of a lower degree of criminal homicide, though the charge be murder in the first degree by poisoning.

The learned judge said that a jury would sometimes return a verdict for a lower degree of homicide under an indictment for one of the specific statutory murders in the first degree, and the State had no remedy. In such case no new trial can be granted to the State, and, if the judgment be arrested, the verdict is nevertheless an acquittal of any degree higher than that for which the verdict is rendered. Continuing the learned judge said:

"Until the Legislature shall think proper to enact that, upon a charge for murder perpetrated by means of poison, etc., the jury must find the accused guilty of murder in the first degree, or acquit him, we know of no remedy except that of appropriate charges to the juries by the circuit judges."

The same question was under consideration in the case of *Fagg* v. *State,* 50 Ark. 506, in which it was said

that where the evidence and the instructions of the court demand a verdict of murder, but the jury finds manslaughter, there is no alternative but to sentence the prisoner accordingly.

In discussing the question, Chief Justice COCKRILL said:

"The principle of those cases is that the court cannot withhold from the jury the power to return a verdict according to their will for any grade of the offense charged against a defendant. The courts can only instruct juries as to their duty, giving them in charge the law applicable to the facts and no other. If there is no evidence whatever tending to establish a lower grade of homicide than murder in one instance, or voluntary manslaughter in another, the court should decline to give to the jury directions as to any lower grade of homicide (*Benton* v. *State,* 30 Ark. 328; *Allen* v. *State, sup.*), and it is the jury's duty to take the court's exposition of the law as that applicable to the case. But the court cannot direct a verdict for the higher offense nor restrain the jury from returning it for the lower grade. *Flynn* v. *State,* 43 Ark. 289; *Adams* v. *State,* 29 Ohio St. 412."

Thus it will be seen that this court is committed to the doctrine that it is the duty of the court to declare the law, notwithstanding the jury has the power to disregard both the evidence and the instructions of the court.

A careful examination of the record in this case shows that there is an entire absence of evidence tending to establish any grade of homicide other than that of murder in the first degree committed in the perpetration of robbery. If there was a failure of proof as to murder in the first degree touching the robbery, there was a like failure of proof as to the evidence necessary to establish any other grade of homicide. An instruction like the one under consideration is not an invasion of the province of the jury; nor can it be regarded as a comment upon the evidence. To say that certain facts, if believed, constitute an offense of one degree, and no other or less

degree, is no comment on the evidence. The instruction simply declares the law upon the facts as the jury may find them.

Other instructions fully define the crime of murder in the first degree committed in the perpetration of robbery, and the court in the present instruction, as well as in all the others given to the jury, left it to them to say whether the evidence warranted a verdict of guilty of murder in the first degree or an acquittal. It has been well said that under such circumstances the responsibility of the verdict is not on the court and jury trying the case, but on the law.

In the case of *Sparf* v. *United States,* 156 U. S. 51, it was urged that an act of Congress providing that in all criminal cases the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which is charged in the indictment, prevented the court from giving an instruction like the one under consideration. The court held to the contrary on the ground that in criminal cases it is competent for the court to instruct the jury as to the legal presumptions arising from a given state of facts; but that it may not, by a peremptory instruction, require the jury to find the accused guilty of the offense charged, nor of any offense less than that charged. The court expressly held that on the trial in a court of the United States of a person accused of committing the crime of murder, if there be no evidence upon which the jury can properly find the defendant guilty of an offense included in or less than the one charged, it is not error to instruct them that they cannot return a verdict of guilty of manslaughter, or of any offense less than the one charged; and that, in such case, if the defendant was not guilty of the offense charged, it is the duty of the jury to return a verdict of not guilty.

In concluding an extended review of the authorities on both sides of the question at p. 101, Judge HARLAN said:

"Public and private safety alike would be in peril, if the principle be established that juries in criminal

cases may, of right, disregard the law as expounded to them by the court and become a law unto themselves. Under such a system the principal function of the judge would be to preside and keep order while jurymen, untrained in the law, would determine questions affecting life, liberty, or property according to such legal principles as in their judgment were applicable to the particular case being tried. If, because, generally speaking, it is the function of the jury to determine the guilt or innocence of the accused according to the evidence, of the truth or weight of which they are to judge, the court should be held bound to instruct them upon a point in respect to which there was no evidence whatever, or to forbear stating what the law is upon a given state of facts, the result would be that the enforcement of the law against criminals and the protection of citizens against unjust and groundless prosecutions, would depend entirely upon juries uncontrolled by any settled, fixed, legal principles. And, if it be true that jurors in a criminal case are under no legal obligation to take the law from the court, and may determine for themselves what the law is, it necessarily results that counsel for the accused may, of right, in the presence of both court and jury, contend that what the court declares to be the law applicable to the case in hand is not the law, and, in support of his contention, read to the jury the reports of adjudged cases and the views of elementary writers.''

We think the holding of the Supreme Court of the United States on the subject is in conformity with the reasoning of this court in decisions bearing upon the question, and that it is in accord with the better reasoning and weight of authority. Hence we hold that this assignment of error is not well taken.

We have carefully considered the instructions given by the court and its rulings on the admission of evidence. It seems to us that the rights of the defendant were guarded by the court at all stages of the trial.

We find no reversible error in the record, and the judgment must therefore be affirmed.

HART, J., (on rehearing). Counsel for the defendant ask for a rehearing, because they insist that the provisions of § 3140 of Crawford & Moses' Digest were not complied with.

The record shows that the defendant and three other persons were jointly indicted for the murder of Lou Stout, charged to have been committed while robbing a bank in Sulphur Springs, Benton County, Ark. The defendants elected to sever for trial. McDonald was tried first, then the defendant, Clark, and then Burchfield. The defendants did not elect the order in which they should be tried, and it is insisted that, under the statute, the defendant should have been tried last, because his name appeared last in the indictment.

This is not the effect of the statute as construed by this court. The provisions of the statute have been held to be directory merely. Where defendants jointly indicted sever, they stand in court as they would had they been indicted separately. If one is not ready for trial, or is not tried when his case is reached, the next in order of succession stands for trial like all other cases upon the criminal docket of the court. Thus it will be seen that, when the defendants severed, the defendant Clark stood upon the docket as if he had been separately indicted, and his case might be tried when reached upon the call of the calendar like that of any other defendant. He has no concern with what was done with the other defendants after they had severed. *Sims* v. *State,* 68 Ark. 188, and *Burns v. State,* 155 Ark. 1.

It is next insisted that the defendant should have a rehearing because he was not served with a true copy of the indictment as required by § 3052 of Crawford & Moses' Digest.

There is no merit whatever in this contention. The defendant was served with a copy of the indictment. His only contention in this respect is that the copy served upon him did not contain the name of the foreman of the grand jury and the date of the filing of the indictment.

The object of the statute in question is to inform the defendant of the charge against him so that he may be enabled to prepare himself for trial. *Johnson* v. *State,* 43 Ark. 391. The copy of the indictment served upon the defendant contained the names of the witnesses against him, and informed him of the nature of the charge against him. It was complete in all respects except as to the date that it was filed in court, and the name of the foreman of the grand jury. These were immaterial matters, and we are of the opinion that the statute was substantially complied with.

Moreover, this court has frequently held that the statute might be waived. *Johnson* v. *State,* 43 Ark. 391, and *Powell* v. *State,* 74 Ark. 355. The defendant had already filed a motion to quash the indictment for certain specified reasons contained in his motion, and also a motion for a change of venue. Both of these motions had been overruled by the court. His action in this respect constituted a waiver of his privilege to have a copy of the indictment served upon him.

Counsel for the defendant, also, insisted that the court erred in giving instruction No. 15, which reads as follows:

"If you find from the evidence beyond a reasonable doubt that Tyrus Clark, while in the alleged perpetration of robbing the Bank of Sulphur Springs, wilfully fired a shot at Lou Stout, which resulted in his death, then the mere fact that he did not intend to take life in the alleged perpetration of robbery is no defense to the charge against him."

We did not set out this instruction in our original opinion or make any separate discussion of it for the reason that we believed that it was contained in our discussion of the law. As we have already seen, the defendant was indicted under § 2342 of Crawford & Moses' Digest, which provides that all murder committed in the perpetration of robbery, burglary, larceny, etc., shall be deemed murder in the first degree. The intent of the

Legislature was to say that where a party committed murder he should be guilty and punished for murder in first degree, if it was done in the perpetration of any of the crimes named in the statute.

It may be true, as contended by counsel for the defendant, that a person could commit a homicide in the perpetration of a robbery and not be guilty of murder in the first degree, still the record before us does not show a state of facts that would authorize the court in charging on any other grade of homicide than murder in the first degree. There is no middle ground in the case.

According to the evidence for the State, the defendant and three other persons went to the Bank of Sulphur Springs for the purpose of robbing it. The defendant and one of these persons stayed in the automobile in which they went to the bank, for the purpose of watching and guarding while the other two went into the bank and robbed it. An officer of the bank was informed of the fact of the robbery and went to the door of his store for the purpose of stopping the robbery or capturing the robbers. As soon as he opened the front door of his store, one of the persons in the car commenced shooting at him with a shotgun. The defendant is shown to have been the person who had the shotgun. The person in the car with the defendant also testified that the defendant shot the deceased. The proof for the State also showed that Stout died as the result of the wound received from the first shot. If the testimony for the State was believed by the jury, the killing was committed in the perpetration of robbery, and by the express language of the statute which supplied the elements of wilfullness, deliberation, and premeditation, the killing was murder in the first degree.

When, on the evidence, the accused is clearly guilty of murder in the first degree, or not guilty, it is not only the right, but the duty, of the court to so instruct the jury. The fact that the defendant did not intend to take life in the perpetration of the robbery is no defense under the

statute. The defendant himself admits that he went there to aid in the perpetration of the robbery, and the mere fact that he had no intention to commit murder while committing the robbery would afford him no defense under the statute. If such was the case, then the statute can serve no useful purpose. Such is the effect of our former decisions in the cases of *Henry* v. *State*, 151 Ark. 620, and *Kelly* v. *State, ante* p. 289.

In addition to the authorities cited in our former opinion, we call attention to a case note in 21 A. L. R. 628. In the discussion of homicide by poison or in the perpetration of felony, the annotator there said: ''The courts have frequently decided that where the only evidence of a homicide tends to show that it was committed by poison or in the perpetration of, or an attempt to perpetrate, one of the felonies enumerated in the statute defining murder in the first degree, no instruction on any grade of homicide less than murder in the first degree is necessary, and that one convicted of murder in the first degree on such evidence is not entitled to a new trial because of a failure to charge the law on a lower grade of homicide, or because of an instruction that no conviction of a lower degree can be had.''

We have examined cases from the various States cited in the note and find that they support the text. Under the evidence there was no middle ground or room for compromise in the present case. Under the evidence for the State the defendant was guilty of the statutory crime of murder in the first degree, committed in the perpetration of robbery. The jury was properly directed to find that defendant was guilty of murder in the first degree, or not guilty.

A further examination of the record convinces us that there was no prejudicial error in the trial of the defendant, and his motion for a rehearing must be denied.